**Ex Parte Hector Rolando MEDINA, Applicant.**

No. WR–75835–01.

Court of Criminal Appeals of Texas.

Oct. 12, 2011.

Brad Levenson, Office of Capital Writs, Austin, for Appellant.

Lisa Smith, Asst. D.A., Dallas, Lisa C. McMinn, State's Atty., Austin, for State.

## ORDER

PER CURIAM.

We have received a document entitled "Application for Writ of Habeas Corpus" in this death-penalty case. We conclude that this document is not, in fact, an "application for writ of habeas corpus" under

Article 11.071 of the Texas Code of Criminal Procedure. We therefore appoint new counsel, and set a new filing date pursuant to Article 11.071, § 4A(b)(3).[1]

## I.

In October 2008, a jury convicted applicant of the offense of capital murder. The jury answered the special issues submitted pursuant to Texas Code of Criminal Procedure Article 37.071, and the trial court, accordingly, set punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Medina v. State*, No. AP–76,036, 2011 WL 378785 (Tex.Crim.App. Jan.12, 2011) (not designated for publication). On direct appeal, he claimed, *inter alia*, that he received ineffective assistance of counsel during the punishment phase of trial. *Id.* at 26–31. We rejected that claim because it was not factually developed in the record. *Id.* at 31 ("By not specifying what evidence his counsel should have presented, the appellant has failed to present a basis to conclude that defense counsel's decision not to present evidence was unreasonable, or that there is a reasonable probability that the result would have been different.").

The trial judge timely appointed present habeas counsel, Mr. Robin Norris, who filed the document that is pending before us. That document asserts that "Applicant's restraint is illegal" for ten listed reasons. Each of these listed reasons allege ineffective assistance of either trial or appellate counsel. The entire "application" is only four pages long and merely states factual and legal conclusions.[2] That conclusory list does not satisfy our state pleading requirements,[3] and counsel knew it. Mr. Norris apparently intended to force this Court to readdress the pleading requirements, as he filed a thorough brief on that very issue in opposition to the State's motion to dismiss the "application."[4]

In this case, both the State and the judge of the convicting court recognized that the document that habeas counsel filed was not a proper writ application as it did not set out specific facts or contain any exhibits, affidavits, or a memorandum of law that alleged any specific facts. The State even offered "to forfeit to applicant a portion of the time statutorily allotted to the State for preparing its response"[5] to ensure that applicant could have his claims addressed on the merits. According to the

1. TEX CODE CRIM. PROC. art. 11.071, § 4A(b)(3) (if counsel does not file a timely writ application, "the court may ... appoint new counsel to represent the applicant and establish a new filing date for the application").

2. Counsel's tenth claim, for example, asserts simply that "Applicant was deprived of the effective assistance of counsel at the guilt stage of trial in that his defense attorney failed to raise the defensive issue of insanity." Is every trial counsel who does not raise the issue of insanity in every trial purportedly constitutionally ineffective? Or are there some specific facts and reasons why trial counsel in this particular case should have raised the issue of insanity? Who knows?

3. *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex.Crim.App.1985) (holding that "it is not

sufficient that the [application for a writ of habeas corpus] allege ... mere conclusions of law").

4. The trial judge found that some of applicant's claims sufficiently "state grounds upon which, if proven to be true, relief could be granted." However, the application also contained "assertions that do not sufficiently state specific, particularized facts on the face of the application that enable the court to determine whether the application merits further inquiry." Rather than address the few discernible claims that the document contained, the trial judge recommended that "the more prudent action" was to grant the State's motion and let this Court resolve the problem.

5. State's Motion to Dismiss at 5.

State, habeas counsel "informed the State and the [convicting] Court that he will not allege his claims with any greater specificity and will only provide 'boilerplate' case-law if ordered to replead."[6]

Because counsel waited until the last possible day to file this document, a dismissal, even though not on the merits, would foreclose the opportunity to file a new pleading, bringing those same claims. Similarly, a denial on the merits of the conclusory allegations would foreclose any opportunity to raise those same claims again. By all appearances, counsel has thrown his client under the bus. Therefore, we issued an order to counsel to appear before the Court on Wednesday, June 15, 2011, to explain his conduct.

## II.

Mr. Norris duly appeared and began his explanation: "Since I did file a pleading designated as a writ of habeas corpus on time—I think perhaps that the Court regarded it as not being a writ of habeas corpus." Indeed, that is so. However, Mr. Norris maintained that he had a "good faith" belief that his document "sufficiently pleads cognizable grounds for habeas corpus relief" even though he did not set out specific facts to support his legal allegations. He agreed that "[t]he suggestion that I want to change the law is close to being right, at least in my view. But not exactly right. I'm not trying to change the law. I'm trying to get some law." He admitted that he had "frequently" discussed the situation with his client "[a]nd he's not happy about it. But he's a lay person." Mr. Norris maintained that it is "in the best interests of [his] client, Mr.

Medina, and similarly situated death-row inmates not to plead evidence in briefing in the initial application because it promotes disposition without evidentiary hearings." He largely agreed that he did not want to plead facts that might support his allegations because he did not want the State to know what his evidence was.

Mr. Norris stated that he had been a practicing lawyer in Texas for some thirty-five years, had worked for a number of years at this Court, and had represented somewhere between ten and twenty death-row inmates on their post-conviction habeas-corpus applications. He admitted that, prior to this case, he had always included exhibits and stated facts that would support his legal contentions, but he did not do so in this case because he did not think the law was settled that a habeas application must contain facts. He stated that he had thoroughly investigated the facts underlying his claims, but that he intentionally did not include them in his client's pleading, and that he intentionally filed his pleading on the last possible day and refused the State's offer to give him more time to replead and add those crucial facts. It is abundantly clear that counsel's actions were not the result of mistake, inadvertence, negligence, or a lack of legal expertise. It is also abundantly clear that counsel is intentionally jeopardizing applicant's "one very well represented run at a habeas corpus proceeding."[7]

On July 1, 2011, this Court issued an order inviting the trial judge, the State, and Mr. Norris to brief five issues concerning this matter.[8] In early August, applicant's *pro bono* counsel for purposes

---

6. *Id.*

7. *See Ex parte Kerr*, 64 S.W.3d 414, 418–19 (Tex.Crim.App.2002) (quoting Representative Pete Gallego).

8. Those issues were:

1. Do any of applicant's allegations sufficiently allege specific facts, which if proven true, would entitle him to habeas relief, thus requiring further proceeding in the trial court?

of filing a petition for certiorari in the United States Supreme Court[9] filed a "Motion for Appointment of Conflict–Free Counsel" to respond on applicant's behalf to the Court's questions. We appointed the Office of Capital Writs to represent applicant for that limited purpose on August 8, 2011. We have now received replies from the State, the Office of Capital Writs, and Mr. Norris. We have also received two *pro se* documents submitted to the trial court by applicant which purport to be motions to amend the original petition for habeas corpus. We dismiss these *pro se* filings because applicant is not entitled to hybrid representation under Article 11.071 and because his filing is a motion to amend the original "application," but an untimely amendment adding new claims is not allowed under Article 11.071.

The State and the Office of Capital Writs both agree that the document filed by Mr. Norris was not a proper writ application under Article 11.071 because it does not allege specific facts, which, if proven true, would entitle applicant to relief. Both agree that this Court should put aside that document, proceed under Section 4A of Article 11.071, and appoint new counsel to ensure that any claims that applicant may have are fully and fairly litigated in state court. Mr. Norris continues to assert that Texas law does not require him to plead specific factual allegations. He adds that if this Court decides otherwise, he should be given an opportunity to amend the pleadings, even though he previously rejected that opportunity when it was offered by the State.

We agree with the State and the Office of Capital Writs in their analysis of the law applicable to this particular case.

### III.

■ Texas law has long required all post-conviction applicants for writs of habeas corpus to plead specific facts which, if proven to be true, might call for relief.[10] Counsel has not cited a single case in which this Court has granted a writ application that contained only conclusory allegations or even remanded such an application for further consideration by the convicting court. A Texas writ application must be complete on its face. It must allege specific facts so that anyone

---

2. What statute or other legal authority supports the State's motion to dismiss and the trial court's recommendation to dismiss the writ application?
3. Is a dismissal consistent with current caselaw in this type of situation?
4. What are the consequences to the defendant and to past, present, and future 11.071 writ applications and Article 11.07 writ applications if this Court: (1) appoints new counsel under Article 11.071, § 4A, and allows applicant to file a new application; (2) dismisses the application in accord with the State's motion; or (3) denies relief on the application?
5. Under the circumstances of this case, what other alternative are available under Article 11.071 to ensure that an application obtains a "full and fair opportunity" to have his legal claims reviewed by this Court?

9. That petition was filed in the Supreme Court on May 27, 2011, and is still pending.

10. The cases are legion in which we remand habeas-corpus applications to the convicting court for further development when the applicant "has alleged facts that, if true, might entitle him to relief." Some remand cases from a single week include, *Ex parte Lahood*, No. WR–72,580–01, 2011 WL 2369392 (Tex. Crim.App. June 8, 2011); *Ex parte Edwards*, No. WR–75,213–02, 2011 WL 2378180 (Tex. Crim.App. June 8, 2011); *Ex parte Griffin*, No. WR–75,528, 2011 WL 2382917 (Tex. Crim.App. June 8, 2011); *Ex parte Haas*, No. WR–75,757, 2011 WL 2383225 (Tex.Crim. App. June 8, 2011); *Ex parte Foster*, No. WR–75,856–01, 2011 WL 2383996 (Tex.Crim.App. June 8, 2011). All of these remand orders state that the applicant had "alleged facts that, if true, might entitle him to relief."

reading the writ application would understand precisely the factual basis for the legal claim.[11] Our official form, required to be used in all non-death-penalty applications for a writ of habeas corpus, explicitly states that an applicant must "briefly summarize the facts supporting each ground" for habeas relief.[12] The application may, and frequently does, also contain affidavits, associated exhibits, and a memorandum of law to establish specific facts that might entitle the applicant to relief.[13]

Furthermore, Article 11.071 of the Code of Criminal Procedure requires that, after the applicant files the application and the State files an answer, the convicting court (within 20 days) "shall determine whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist and shall issue a written order of the determination."[14]

If the applicant has not alleged facts, this determination could not be made. And the parties and the court would be unable to prepare for the hearing that is required when there are "controverted, previously unresolved factual issues material to the legality of the applicant's confinement."[15]

---

**11.** *See Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex.Crim.App.1985) ("In a postconviction collateral attack, the burden is on the applicant to allege and prove facts which, if true, entitle him to relief."); *see also Ex parte Tovar*, 901 S.W.2d 484, 485–86 (Tex.Crim. App.1995) ("In order to be entitled to post conviction collateral relief the applicant must raise a question of constitutional magnitude, allege facts establishing the constitutional violation and, if appropriate, prove that he was harmed."); *Ex parte Akhtab*, 901 S.W.2d 488, 490 (Tex.Crim.App.1995) ("Because applicant does not allege or prove facts which, if true, would entitle him to relief, all requested relief is denied.").

In *Ex parte Maldonado*, this Court explained why it was necessary to dismiss the writ application in that case.

> In the context of an allegation of an egregiously erroneous charge, one which rises to the level of having denied the applicant a fair and impartial trial, this requirement of pleading will be strictly pursued. In other words, it is not sufficient that the petition allege the denial of a fair and impartial trial or due process of law, which are mere conclusions of law; neither is it adequate to allege the bare fact that the court's charge was somehow erroneous.

> Rather, the applicant must allege the reasons a given error in the charge, in light of the trial as a whole, so infected the procedure that the applicant was denied a fair and impartial trial. Once alleged, the burden on the applicant to prove such a denial is heavy and cannot be carried by merely attaching a certified copy of the court's charge to the application for writ of habeas corpus, as was done here.
> 688 S.W.2d at 116.

**12.** Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under Code of Criminal Procedure, Article 11.07 ("Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.*"), available at http://www.cca.courts. state.tx.us/forms/AMENDED11.07%20Writ %20App%20Form.wpd.

**13.** *See* State Bar of Texas Guidelines and Standards for Texas Capital Counsel, Guideline 12.1(B)(7)(d) (Duties of Post–Trial Counsel) (2006). These guidelines recommend the following:

> Habeas counsel should attach all available proof to the application (affidavits, documentary evidence, etc.) even though doing so is not technically required by state law. Failing to attach proof in state court will likely waive the client's ability to present it in federal court. When proof is unavailable, habeas counsel should plead all factual allegations with the greatest possible specificity.

**14.** TEX.CODE CRIM. PROC. art. 11.071, § 8.

■ Applicant's counsel told us that applicants should not be required to plead "evidence." We agree. There is no requirement in the statute that they do so, just as there is no requirement that the State allege evidence in an indictment. But there are clear statutory requirements for indictments and for these habeas-corpus applications to allege the facts which must be proved by evidence.

The predecessor statute to Article 11.07—a statute that governed both capital and non-capital habeas proceedings—explicitly required specific factual pleadings: "When a petition for writ of habeas corpus contains sworn allegations of fact, which, if true, would render petitioner's confinement under the felony conviction illegal...." [16]

This pleading requirement is similar to that set out for the use of federal courts considering applications for post-conviction writs of habeas corpus. [17] Under Rule 2 of the Rules Governing § 2254 Cases in the United States District Courts, a petitioner in federal court must both "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." [18] The Advisory Committee's Notes to Rule 2 state that the petition generally must be on the designated form because "[i]n the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. Since it is the relationship of the facts to the claim asserted that is important, these petitions were obviously deficient." [19]

Indeed, the United States Supreme Court has recognized the importance of pleading specific facts in federal habeas applications because that requirement helps to sort out the obviously unmeritorious claims from those that deserve more attention. [20] Under the federal rules, a petition that does not plead sufficient "particularity" of facts may be dismissed by the district court without even ordering a responsive pleading. [21] In federal courts,

15. *Id.*

16. TEX.CODE CRIM. PROC. art. 11.07, § 2(b) (Act of May 1, 1967, 60th Leg., R.S., ch. 659, § 7, 1967) (amended 1977).

17. *See* 19A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, JURISDICTION AND RELATED MATTERS, Appendix of Forms, at 372 (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus.) In that form, a petitioner must set out "supporting facts" for each ground asserted for relief. The instructions state, "Do not argue or cite law. Just state the specific facts that support your claim."

18. *Id.*, Rules Governing § 2254 Cases in the United States District Courts, Rule 2 at 337–38.

19. *Id.*, Rules Governing § 2254 Cases in the United States District Courts, Rule 2, Advisory Committee Notes to 1976 Adoption, Subdivision (c) at 339.

20. *Mayle v. Felix*, 545 U.S. 644, 655, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) (noting the heightened pleading requirements in post-conviction writs of habeas corpus and distinguishing those requirements from the "notice" pleadings applicable to "ordinary" civil lawsuits). The Court quoted the Advisory Committee's Note to Rule 4 that " 'notice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." *See also id.* at 669–70, 125 S.Ct. 2562 (Souter, J., dissenting) ("the purpose of the heightened pleading standard in habeas cases is to help a district court weed out frivolous petitions before calling on the State to answer").

21. *Id.* at 656, 125 S.Ct. 2562. *See also id.* at 670, 125 S.Ct. 2562 (Souter, J., dissenting), citing 1 R. HERTZ & J. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 11.6, at 573 n.3 (4th ed.2001) ("[F]act pleading, like other habeas corpus rules and practices, enables courts ... to separate substantial petitions from insubstantial ones quickly and without need of adversary proceedings"); Note, *Devel-*

the standard to determine whether a hearing and findings of fact and conclusions of law are required, is whether the petitioner "has made specific factual allegations that, if true, state a claim on which relief can be granted." [22]

As was stated by the Seventh Circuit, a claim of ineffective assistance of counsel is one in which specific factual allegations and a sworn verification of those specific facts is particularly important:

> If the allegation is proven, [the petitioner] has been deprived of an essential constitutional guarantee. If the allegation is false, it could damage seriously the professional reputation of counsel and disrupt the finality of a most serious undertaking: vindication of the public justice through a criminal conviction. Given the very important concerns at stake, the rules sensibly require *some* threshold showing, however minimal, of an evidentiary basis before requiring a district court to undertake the task of evaluating the allegations and determining whether relief is warranted.[23]

In sum, we reiterate today what we have long held: an application for a writ of habeas corpus, whether filed under Article 11.07 or 11.071, must contain sufficient specific facts that, if proven to be true, might entitle the applicant to relief.

## IV.

The document filed in this case does not contain such specific facts and is not a proper "application" for a writ of habeas corpus. For example, in his second claim, habeas counsel states,

> Applicant's death sentence violates the Sixth Amendment to the United States Constitution because Applicant was deprived of the effective assistance of counsel at the punishment phase of his trial in that his defense attorney failed to exhaust all available avenues to procure the attendance of necessary witnesses for the defense in time to meet reasonable trial settings of the court.[24]

That is a perfectly appropriate legal claim, but habeas counsel fails to provide any facts that would support that claim:[25]

---

opments in the Law—Federal Habeas Corpus, 83 HARV.L.REV. 1038, 1175 (1970) ("The justification for stringent pleading requirements in habeas corpus is thought to lie in the need to protect the courts from the burden of entertaining frivolous applications").

**22.** See, e.g., United States v. Withers, 638 F.3d 1055, 1062 (9th Cir.2011); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir.1990) (habeas petitioner's conclusory allegations failed to establish valid ineffective-assistance-of-counsel claim, no evidentiary hearing necessary); Puglisi v. United States, 586 F.3d 209, 213 (2d Cir.2009) (setting out requirements that would entitle a federal prisoner filing a claim under 28 U.S.C. § 2255 to an evidentiary hearing; "The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding. The petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits: e.g., an affidavit from the petitioner or

others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence."); Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002) ("While [the petitioner] is correct that this court requires a district court to grant an evidentiary hearing if a § 2255 petitioner 'alleges facts that, if proven would entitle him to relief,' the threshold determination that the petitioner has sufficiently alleged such facts requires the petitioner to submit a sworn affidavit showing what specific facts support the petitioner's assertions.").

**23.** Kafo v. United States, 467 F.3d 1063, 1069 (7th Cir.2006).

**24.** Writ Application at 2.

**25.** Indeed, this is the very same ineffective-assistance claim that was included in applicant's direct appeal, but we rejected it because there was no factual basis in the record to support the claim. There is still no factual

What necessary witnesses? What would they have testified to? What means did trial counsel use to procure their attendance? Why were these means constitutionally insufficient? What other means were available? Why were those means constitutionally necessary under the circumstances? How, if at all, was applicant harmed? A writ application must be complete on its face. It must allege specific facts so that anyone reading the writ application would understand precisely the factual basis for the legal claim.[26] And, indeed, habeas counsel was fully aware of this rule as he expounded upon it in his legal brief in opposition to the State's motion to dismiss.

Under Article 11.07—the statute for non-capital writ applications—a document that does not contain specific factual contentions is not a true writ application and is dismissed without prejudice to refile. Dismissal is appropriate because such an inmate has no time limits within which to file an application. If he fails to comply with the pleading requirements under Article 11.07, his first "non-application" is dismissed and he may, at his leisure, file

another.[27] That is not always possible under Article 11.071, which contains strict time limits for filing a writ application.[28] Habeas counsel in this case, acting with intentional design, ensured that he could not be required to replead because he filed the "non-application" on the last possible day. He intentionally filed an improper application despite his client's objections.

■ In *Ex parte Kerr*,[29] we held that a death-penalty "writ application" that did not "challenge the validity of the underlying judgment" was no writ application at all.[30] The rule in *Kerr* is as follows: "To constitute a document worthy of the title 'writ application' filed pursuant to article 11.071, the writ must seek 'relief from a judgment imposing a penalty of death.' A death penalty 'writ' that does *not* challenge the validity of the underlying judgment and which, even if meritorious, would not result in immediate relief from his capital-murder conviction or death sentence, is not an 'initial application' for purposes of art. 11.071, § 5...."[31] As Judge Overstreet stated in his dissent to the dismissal of a stay of execution for Ricky Kerr, such a "non-application" is

---

basis in the present document to support that claim.

**26.** *Compare Blackledge v. Allison,* 431 U.S. 63, 75–76, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (habeas petitioner's claims were sufficiently supported by specific factual allegations to survive summary dismissal; petitioner "alleged as a ground for relief that his plea was induced by an unkept promise. But he did not stop there. He proceeded to elaborate upon this claim with specific factual allegations. The petition indicated exactly what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication.").

**27.** *See Ex parte Blacklock,* 191 S.W.3d 718, 719 (Tex.Crim.App.2006) ("Because applicant did not complete the portions of the application form which require a list of the claimed

grounds for relief and the supporting facts, we dismiss applicant's application for writ of habeas corpus as non-compliant.").

**28.** Tex.Code Crim. Proc. art. 11.071, § 4(a) ("An application for a writ of habeas corpus, returnable to the court of criminal appeals, must be filed in the convicting court not later than the 180th day after the date the convicting court appoints counsel under Section 2 or not later than the 45th day after the date the state's original brief is filed on direct appeal with the court of criminal appeals, whichever date is later.").

**29.** 64 S.W.3d 414 (Tex.Crim.App.2002).

**30.** *Id.* at 419.

**31.** *Id.* (emphasis in original) (quoting Tex. Code Crim. Proc. art. 11.071, § 1).

a farce and travesty of applicant's legal right to apply for habeas relief. It appears that this Court, in approving such a charade, is punishing applicant, rewarding the State, and perhaps even encouraging other attorneys to file perfunctory "non-applications." Such a "non-application" certainly makes it easier on everyone—no need for the attorney, the State, or this Court to consider any potential challenges to anything that happened at trial. Nevertheless, the Legislature has provided convicted capital defendants with the right to make such challenges by habeas corpus application.[32]

Indeed, that is precisely why this Court held, in its later decision involving Ricky Kerr, that the initial "non-application" filed by his habeas counsel did not qualify as a writ application for purposes of Article 11.071. Therefore, Kerr was entitled to have a true writ application, filed after the denial of the "non-application," considered on its merits.[33] What Kerr called a "subsequent application" was actually his initial application because it was "the first document in which applicant's claims *and contentions,* if true, might merit 'relief from a judgment imposing a penalty of death.'"[34] That is, the application must contain *both* legal claims and factual contentions.

■ The Great Writ protects a "proper respect for the concept of justice" and therefore courts require "that petitions be filed in earnest and that all contentions of merit be presented and ruled upon as ex-

peditiously as possible."[35] The process for deciding those factual contentions is found in Article 11.071, § 9, which states, "If the convicting court determines that controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist, the court shall enter an order ... designating the issues of fact to be resolved[.]"[36] But the fact issues that must be resolved are those contained within the writ application and the State's controverting answer. Without specific facts, factual contentions, and factual issues set out in the application, the convicting court has nothing to resolve.

■ Applicant, because of his counsel's intentional refusal to plead specific facts that might support habeas-corpus relief, has not had his "one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of [Article 11.071]."[37] Not full because he is entitled to one bite at the apple, i.e., one application, and the document filed was not a proper writ application. Not fair because applicant's opportunity, through no fault of his own, was intentionally subverted by his habeas counsel.

■ It has been suggested that the reasoning and result in this case could open the proverbial floodgates to protracted and repetitious litigation by those who have filed (or might in the future file) defective pleadings. But as the State appropriately notes, this is one of those ex-

---

32. *Ex parte Kerr,* 977 S.W.2d 585, 585 (Tex. Crim.App.1998) (Overstreet, J., dissenting).

33. *Ex parte Kerr,* 64 S.W.3d 414, 415 (Tex. Crim.App.2002) ("We conclude that applicant's original filing was not an application for a writ of habeas corpus as defined under article 11.071, and therefore his application of August 6, 2000, is his initial writ. We consider it timely filed as of today's date.").

34. *Id.* at 419 (emphasis added) (quoting Tex Code Crim. Proc. art. 11.071, § 1).

35. *Ex parte Carr,* 511 S.W.2d 523, 525 (Tex. Crim.App.1974), *quoted in Kerr,* 64 S.W.3d at 418 n. 11.

36. Tex Code Crim. Proc. art. 11.071, § 9(a).

37. *Kerr,* 64 S.W.3d at 419.

tremely rare situations envisioned in *Kerr*, in which habeas counsel has employed a " 'Machiavellian strategy designed to thwart the proper statutory procedure for filing a death penalty writ.' "[38] We do not foresee that other counsel will emulate such conduct.[39] As the State notes, "[t]here should be no landslide of similarly deficient applications. If the court explicates the pleading requirements in death-penalty writ applications, the outcome in this case could prevent other habeas counsel from using any ambiguity in the law as an excuse to file a similarly deficient application."[40] Furthermore, this case is doubly *sui generis* because the State agrees that counsel's filing was not a proper habeas-corpus application, and it recommends that this Court proceed under Article 11.071, § 4A. We commend the State for its position and note its statement that "[t]his is an unusual posture for the State to take and one that it will not likely assume with regularity in the future."

■■■ Under these unique and extraordinary circumstances, involving not habeas counsel's lack of competence but his misplaced desire to challenge the established law at the peril of his client, we conclude that under Article 11.071, § 4A(a), counsel failed to file a cognizable writ application. Thus, we shall proceed pursuant to Section 4A(b)(3). Under that section we shall appoint new counsel, specifically the Office of Capital Writs, to represent applicant.[41] We establish a new filing date for the application to be filed in the convicting court as being 180 days from the date of this order.[42] We dismiss applicant's *pro se* Motion to Amend the Petition for State Habeas Corpus. We hold original habeas counsel, Mr. Robin Norris, in contempt of court and enter an order denying him compensation under Section 2A of Article 11.071.[43]

Copies of this Order shall be sent to applicant, counsel, the convicting court, and the Office of Capital Writs.

It is so ordered this the 12th day of October, 2011.

PRICE, J., filed a concurring opinion in which JOHNSON and COCHRAN, JJ., joined.

KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.

KEASLER, J., filed a dissenting opinion in which HERVEY, J., joined.

MEYERS, J., dissented.

PRICE, J., concurring statement in which JOHNSON and COCHRAN, JJ., joined.

At considerable risk to his client, and apparently against his client's avowed wishes, counsel who was appointed to represent the applicant in this post-conviction application for writ of habeas corpus proceeding from a capital conviction and death sentence waited until the last possible date to file what essentially amounts to a so-

---

38. State's Response at 23 (quoting *Ex parte Kerr*, 64 S.W.3d 414, 421 (Tex.Crim.App. 2002)).

39. While not entitled to relief on a claim of ineffective assistance of habeas counsel under *Ex parte Graves*, 70 S.W.3d 103 (Tex.Crim. App.2002), and its progeny, a defendant is entitled to not have his right to habeas review deliberately sacrificed by highly competent counsel.

40. *Id.* at 24–25.

41. TEX.CODE CRIM. PROC. art. 11.071, § 4A(b)(3), (e).

42. *Id.* § 4A(b)(3), (d).

43. *Id.* § 4A(c).

called "skeletal" writ application. He did so advisedly. His admitted purpose was to provoke a dispute in the convicting court with respect to the level of specificity that is required before it may be said that a post-conviction application for writ of habeas corpus suffices to allege facts which, if true, would entitle the applicant to relief. The Court today maligns counsel for having thus "thrown his client under the bus."[1] Judge Keasler further accuses counsel of "gamesmanship" and "arrogance."[2] Given the magnitude of the risk to which counsel has knowingly subjected his client, it is difficult to quibble with these harsh characterizations.

Judge Keasler believes that the lack of specificity dictates that we deny the applicant's writ application for failing to allege facts which, if true, would entitle the applicant to relief.[3] This effectively leaves the applicant with nothing more to raise in federal habeas corpus proceedings than whatever federal constitutional issues were raised on direct appeal, supported only by whatever facts are already memorialized in the appellate record—in other words, precious little. The applicant would pay dearly for his habeas counsel's gambit. I find it intolerable that the applicant should be made to suffer for the miscalculation of habeas counsel by forfeiting entirely his state habeas forum—and perhaps, ultimately, his life.

Instead, the Court today sensibly declares that what counsel filed in this case does not constitute an initial application for writ of habeas corpus in contemplation of *Ex parte Kerr*.[4] Because no application was timely filed, this Court is authorized by Section 4A(b)(3) of Article 11.071 to appoint new counsel and start the timetable anew.[5] That is what the Court does today, and I join its order.

Judge Keasler worries that for the Court to adopt this solution in order to resolve the present dilemma will open the floodgates—that equal protection principles will compel us to permit the appointment of new counsel and new timetables for every capital writ application that fails to state facts with sufficient particularity, alleges claims only conclusorily, or presents nothing but non-cognizable claims.[6] I do not share this concern. Section 4A(b) of Article 11.071 grants this Court the *discretion* to extend the deadline for filing an untimely initial pleading, and to appoint new counsel, but it does not *require* us to do so. Not all capital habeas applicants who file patently inadequate initial pleadings and then let the deadline for filing run out will be similarly situated. Here, we have good reason to believe, from our knowledge of this case on direct appeal,[7] and from counsel's oral presentation when called to task before this Court, that there is definite substance behind the deliberate opacity of his present pleading. That is simply not the case for the general run of inadequate capital habeas pleadings that come before us. And it is worth remem-

---

1. Court's Order, at 636.

2. Dissenting Statement of Keasler, J., at 647 & 648, respectively.

3. *Id.* at 648–49.

4. 64 S.W.3d 414 (Tex.Crim.App.2002).

5. *See* Tex.Code Crim. Proc. art. 11.071, § 4A(b)(3) (when capital habeas counsel fails to file timely initial application for writ of

habeas corpus, this Court "may ... appoint new counsel to represent the applicant and establish a new filing date for the application, which may be not more than 270 days after the date the court appoints new counsel").

6. Dissenting Statement of Keasler, J., at 649.

7. *Medina v. State*, 2011 WL 378785 (Tex. Crim.App., No. AP–76,036, delivered January 12, 2011) (not designated for publication).

bering at this juncture that the convicting court, at least, regarded some unspecified portions of counsel's writ application to be sufficiently detailed to state cognizable claims-claims that may very well require further factual development. Under these circumstances, the Court would be derelict not to exercise its discretion to appoint new counsel to represent the applicant.

For these reasons, I join the Court's order.

KELLER, P.J., dissenting in which HERVEY, J., joined.

For the reasons discussed in Judge Keasler's dissenting statement, I agree that we cannot treat the application in this case as a "non-application."[1] To those reasons, I would add another consideration: The Court's holding will wreak havoc with non-capital habeas applications under Article 11.07.[2]

Now that we have a form that must be filled out, a non-capital habeas applicant must specify at least one ground for relief and, for each ground, fill out a portion of the form that asks for supporting facts.[3] If a non-capital habeas applicant fails to fill out the supporting-fact section, then his application will be dismissed. But if the applicant does fill out the portion of the form that asks for supporting facts, but makes only conclusory statements, or in some other way fails to adequately plead facts, then we routinely deny the application. That is, a non-capital habeas application under Article 11.07 that looks like the application in this case results in a denial of relief rather than a dismissal.

The Court says that "dismissal is appropriate" for such applications because Article 11.07 has no time limits. But it does not explain why the presence or lack of time limits would have any bearing on the correct disposition of a habeas application, and it is not apparent to me why it would. If the Court is saying that such applications have, until now, been dismissed, it is patently incorrect. If it is saying that they will henceforth be dismissed, then it has already begun the process of torturing the law to fit its disposition of this case.

Most applications are written by *pro se* inmates. Some of the best applications are written by *pro se* inmates, but it frequently happens that we receive an application from a *pro se* inmate that fails to adequately plead facts. No doubt we have received thousands of them over the years. Now the Court has opened the floodgates for all of those applicants to claim that their earlier applications were non-applications because they were insufficiently pled, the result being that they get to file new applications. And, unless the Court's order means that all inadequate 11.07 applications are now to be dismissed, then for current and future non-capital habeas applicants, we will have to grade unmeritorious applications to decide whether the claim is invalid because of a pleading defect or, instead, because the facts pled simply do not give rise to a valid claim for relief.[4] Deciding whether an application is substantively unmeritorious or simply inadequately pled will not always be easy, and may sometimes lead to hair-splitting distinctions. Moreover, it is important to recognize that sometimes an applicant fails to plead sufficient facts because the facts

1. *See* Judge Keasler's dissent, *post.*

2. Tex.Code Crim. Proc. art. 11.07.

3. *See* Tex.R.App. P. 73.1(c) ("The person making the application must provide all information required by the form. The application must specify all grounds for relief, and must set forth in summary fashion the facts supporting each ground.").

4. *See* Judge Keasler's dissent at 647.

are simply not on his side. It should not be a surprise that an applicant who has no valid basis for relief may find it difficult to plead one.

In the present case, the trial judge has found that some of applicant's claims sufficiently state grounds "upon which, if proven to be true, relief could be granted." The trial judge apparently believed the prudent course was to dismiss the application, however, because most of the claims were not adequately pled.

The trial judge should not have recommended a dismissal of the application. Instead, if any of applicant's claims were adequately pled and involved fact allegations that were disputed by the State, the trial judge should have designated the issues of fact to be resolved and the manner in which they would be resolved.[5] If no claims were adequately pled, then the trial judge should have so determined, requested proposed findings of fact from the parties, and filed findings of fact and conclusions of law.[6] Because the trial judge has not done either of these things, we should remand this case to him for further disposition.

I must take a moment to disagree with the assessments of Mr. Norris's conduct as "plac[ing] his own interests above his client's"[7] and "throwing his client under the bus."[8] Mr. Norris says that he acted in good faith in what he thought was his client's best interest. I would give him the benefit of the doubt.[9] Based on his years of experience with numerous death penalty habeas applications,[10] he believed that his approach would "maximize the probability" of a live hearing for his client. He further believed that obtaining a live hearing would increase the likelihood of obtaining relief. Mr. Norris tells us that he is familiar with the evidence, and he calls his approach "a legitimate tactical decision." The bottom line seems to be that he thinks his client will lose if he does not get a live hearing, so Mr. Norris has done what he can to obtain one. The fact that his plan failed to result in a live hearing does not mean it was conceived for his own benefit instead of his client's.

Finally, the Legislature could enact a law that confers upon this Court the discretion to order one of the remedies under Article 11.071, § 4A, when an attorney timely files a "skeletal" death-penalty application that does not contain any adequately pled claims. One reason that § 4A was enacted in the first place was to give the courts some leeway in dealing with untimely writ applications after a problem arose in a particular case. As

---

5. Tex.Code Crim. Proc. art. 11.071, § 9.

6. *Id.*, § 8(b), (c).

7. *See* Judge Keasler's dissent at 647.

8. *See* Court's order at 636.

9. Mr. Norris does not give this Court the benefit of the doubt. He says, "All of the state's arguments, not to say the obvious attitudes of judges in the trial courts and in this Court, are manifestly designed to preserve a system of adjudicating habeas corpus applications in summary fashion. Those arguments and attitudes disclose an unmistakable preference for denying a full and fair hearing ..."

Also, "Denying [applicant] the opportunity for such a hearing is plainly the goal of everyone who argues that he must include affidavits and legal briefing as a part of the initial habeas application ..." He says also that we are "living in a dream world" if we think paper hearings are adequate.

10. Mr. Norris is listed in the Court's case management system as an attorney of record on at least two such cases in which relief was granted. *Ex parte Varelas*, 45 S.W.3d 627 (Tex.Crim.App.2001); *Ex parte Lim*, No. AP-76,593, 2011 WL 2581924 (Tex.Crim.App. June 29, 2011)(not designated for publication).

with the original enactment of § 4A, such a statute could be made retroactive. But, under my view (and Judge Keasler's view), this Court is currently powerless to do anything if counsel timely files a death-penalty habeas application attacking his conviction or death sentence but fails to adequately plead any of the claims.[11]

I respectfully dissent.

KEASLER, J., dissenting in which HERVEY, J., joins.

This case is alarming to say the least. Counsel, in the name of gamesmanship, has placed his own interests above his client's, who has been convicted of capital murder and sentenced to death. The client, a "layman" according to counsel, is not pleased with counsel's performance.

And to make matters worse, the majority is proceeding under a legal fiction. The majority treats the application as a "non-application" for purposes of Section 11.071. In *Ex parte Kerr*, the application challenged only the validity of the death-penalty statutory scheme.[1] We held that Kerr's application did not challenge the validity of the judgment. This application is nothing like that in *Ex parte Kerr*; it does challenge the validity of the judgment and sentence. *Ex parte Kerr*'s holding was extremely limited, and we must remain true to that precedent. By adopting the majority's view, we are now required to grade 11.071, as well as 11.07, applications and decide which allegations are sufficient enough to pass muster and which are not. What if an application presents all non-cognizable habeas claims? Does this mean that we should treat it as a "non-application?" This very situation has occurred

numerous times in the past, and we did not dismiss those applications as "non-applications."

That counsel deliberately failed to adequately plead facts does not justify the Court's decision to rescue this applicant. Let me be clear that my complaint has nothing to do with this applicant. Over the past thirteen years that I have been on this Court, I have reviewed numerous 11.071 applications. Some of them have been just as poorly pled as this application. Yet, in those cases, we denied relief, despite the appalling deficiencies, which, under today's decision, should have been characterized as non-cognizable applications. The applicants in those cases were victims of deficient and inadequate lawyering that was a result of ignorance but not necessarily incompetent.[2] Here, the deficient lawyering is deliberate. It is inappropriate to draw any distinction between the two. The outcome in the past has been the same—the death-row client's one opportunity to seek habeas relief is lost. This will carry over into the applicant's federal court habeas proceedings, rendering those proceedings meaningless.

A consistent and proper application of the law leads to the following conclusions:

Counsel has filed an Article 11.071 application on behalf of his client that resembles what we have referred to as a skeletal application. This does qualify as a writ application under 11.071. As a result, the application does not fall under Article 11.071, Section 4A, because it was timely filed. The application, however, fails to comply with the basic, minimum pleading requirements well known to the bench and bar, including this particular attorney, who

---

11. *See Ex parte Graves,* 70 S.W.3d 103 (Tex. Crim.App.2002).

1. 64 S.W.3d 414, 416–18 (Tex.Crim.App. 2002).

2. *See, e.g., Ex parte Reynoso,* 257 S.W.3d 715, 723 (Tex.Crim.App.2008) (denying the applicant's sole non-cognizable habeas claim).

has represented numerous death-row inmates on habeas. The application before us provides only succinct grounds for relief. The bare-bones grounds do not provide a basis for finding that there are any controverted, previously unresolved fact issues material to the applicant's confinement for purposes of Sections 8(a) and 9(a). Counsel, with express recognition of our case law and an air of arrogance, has violated the pleading requirements.

A habeas applicant must plead facts that entitle him or her to relief and must prove his or her claim by a preponderance of the evidence.[3] This is especially relevant when it relates to allegations of ineffective assistance of counsel under the Sixth Amendment, which requires a showing of deficient performance and resulting prejudice.[4] The conclusory ineffective-assistance allegations presented here do not meet the essential prejudice requirement by showing that there is a reasonable probability that the result of the proceed-

ings would have differed in the absence of counsel's alleged deficient performance.[5] This mandates a fact-intensive and exhaustive review of the proceedings as a whole. Because the burden is on the applicant, the courts are not responsible for delving into the record, investigating the case, and then formulating a habeas applicant's claims.

The State originally moved to dismiss the application based on the failure to comply with the pleading requirements, and the trial judge has recommended that we grant the motion to dismiss. Our writ jurisprudence has recognized a distinction between a denial and a dismissal. A denial is a disposition related to the merits.[6] "A disposition is related to the merits if it decides the merits or makes a determination that the merits of the applicant's claims can never be decided."[7] A dismissal is a disposition unrelated to the merits.[8] Our practice when the grounds alleged fail to meet the pleading requirements is to

---

3. *Ex parte Rains*, 555 S.W.2d 478, 481 (Tex.Crim.App.1977); *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App.1983) ("Counsel's failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony."); *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex.Crim.App.1995); *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex.Crim.App.2000); *see also Wilkerson v. State*, 726 S.W.2d 542, 550 (Tex.Crim.App.1986) (finding "there is nothing in the record to show that potential defenses were precluded or that a visit to the scene would have made any difference in the defense's case[;] the failure of the attorneys to visit the scene does not militate against a finding of reasonable representation."); *Ex parte Chandler*, 182 S.W.3d 350, 353 n. 2 (Tex.Crim.App.2005) (noting that the applicant bears the burden of proof and that the Court was unable to "independently verify the accuracy of the facts set out in the trial court's findings" because the applicant failed to include a copy of the trial testimony in the writ record.); *Ex parte Ramirez*, 280 S.W.3d 848, 853–54 (Tex.Crim.App.2007) (applicant

failed to show that testimony of uncalled witnesses would have been favorable and that counsel's failure to review video recording of the crime was prejudicial); *Ex parte Imoudu*, 284 S.W.3d 866, 868 (Tex.Crim.App.2009) (psychiatric report concluding that the applicant was insane at the time of the offense submitted in support of claim that trial counsel was ineffective in failing to investigate insanity defense).

4. *Strickland v. Washington*, 466 U.S. 668, 686–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285–86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

5. *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App.2005) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

6. *Ex parte Torres*, 943 S.W.2d 469, 474 (Tex.Crim.App.1997).

7. *Id.*

8. *Id.*

deny relief based on the fact that the grounds have been reviewed and we have made the determination that no relief is warranted because the allegations are conclusory. Thus, a dismissal of this case is contrary to our practice. And for the reasons already stated, proceeding under Section 4A is incorrect.

In its most recent filing, the State asserts that it is willing to waive the procedural bar and requests that the Court proceed under Section 4A and appoint new counsel. I can appreciate the State's position; we are all troubled by this situation. But the Legislature has made no provision for such a waiver.[9] And again, to permit anything other than a denial would give this applicant an opportunity that other similarly situated applicants have been denied.

Much to my dismay, counsel has intentionally failed his client. And because of that, I formally refer him to the State Bar's grievance committee. But just as disturbing is the majority's decision to destroy what was once a level playing field for 11.071 applicants. Now that it has tied itself in knots, the majority should stand behind its drastic reversal of course and review prior deficiently pled applications (assuming that those applicants have not already been executed) to determine whether any of them should now be characterized as a non-application under this new precedent.

With these comments, I dissent. A copy of this statement shall be sent to the Texas State Bar's Chief Disciplinary Counsel's Office.

---

9. *Compare with Day v. McDonough,* 547 U.S. 198, 201–02, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (recognizing that the AEDPA's statute of limitations is an affirmative defense that is subject to waiver by the State).