

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,809

### EX PARTE MICHAEL DEE HOWARD, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 4321-A IN THE 216TH DISTRICT COURT
### FROM GILLESPIE COUNTY

**KEASLER, J., filed a dissenting opinion.**

### DISSENTING OPINION

I dissented to the Court's opinion remanding Michael Howard's application to the habeas court to address whether Howard's counsel was ineffective for failing to introduce evidence of Howard's intoxication-induced insanity at punishment—a claim Howard never asserted. Now that the Court grants relief on this basis, I must dissent once more.

On remand, the habeas judge simply adopted this Court's statements regarding the evidence developed at the live hearing on our initial remand. These "findings of fact" are essentially our own. From these findings, the judge entered the following conclusions of law:

> Trial defense counsel's performance in failing to obtain expert assistance such as that of Dr. Ferrell in this cause and in failing to investigate and present the above[-]referenced evidence of intoxication-induced insanity during the punishment phase of the trial in this cause was deficient performance . . . . [T]rial defense counsel's deficient performance prejudiced the defense in this cause in that there is a reasonable probability that the result of the punishment phase would have been different.

The judge made these conclusions based on the same record that this Court relied on in denying Howard's pleaded claims of ineffective assistance of counsel contesting counsel's performance in the guilt phase. There was no further factual development after Howard's application was remanded a second time. Notably, there was no affidavit from counsel responding to our own Court-crafted assertion that counsel may have been constitutionally deficient at punishment.

Had we received these findings and conclusions from a habeas judge on any other application we surely would have remanded the matter for a response from counsel. This is our ordinary practice, and we exercise it frequently. "We have said that 'trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.'"[1] At least two compelling reasons support this approach. First, it prevents the temptation to judge counsel's actions through the lens of hindsight and improperly assume that, as a matter of law, counsel could not have been executing a reasonable trial strategy. Second, "brand[ing] defense counsel 'ineffective' without giving him a chance to explain the

---

[1] *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

reasons for his actions" "could have far-reaching consequences for the luckless trial attorney."[2] An attorney found to have rendered ineffective assistance may be forever ineligible for appointment as counsel in a death-penalty case—at trial, in appeal, or in post-conviction habeas.[3]

Turning to the merits of the judge's conclusion that Howard's trial counsel was ineffective, I find the judge's conclusions unsupported by the record. Assuming Howard's counsel was deficient for failing to present evidence of his alleged intoxication-induced insanity at punishment, it can hardly be labeled prejudicial. To grant Howard relief on an ineffective-assistance-of-counsel claim, there must be a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different.[4] With the abundant extraneous-misconduct evidence admitted in Howard's trial, it is difficult to see how the judge could conclude, and this Court adopt, that there is a reasonable probability that the jury would have sentenced Howard to less than 20 years had the intoxication-induced insanity evidence been presented at punishment. The Court's previous opinion denying the pleaded assertions listed the significant extraneous-misconduct evidence Howard committed, which according to the State spanned 23 years:

---

[2] *Andrews v. State*, 159 S.W.3d 98, 104 (Tex. Crim. App. 2005) (Keller, P.J., dissenting).

[3] *Id.* *See* TEX. CODE CRIM. PROC. arts. 26.052(d)(2)(C), 26.52(d) (3)(C), 11.071, § 2(f); TEX. GOV'T CODE § 78.056(a)(2).

[4] *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. 668, 686 (1984)).

- he has a very bad temper;

- he struck his daughter several times when she was sick with mononucleosis;

- he hit his wife so hard he knocked her out and left her unable to sleep on that side of her head because of her injuries;

- he hit his wife while she held their children;

- he punctured the tires on his son's car;

- he was drunk, passed out, threw up, and assaulted a party guest;

- he bought lingerie for a female high school employee;

- he grabbed [his son] Bradley by the neck and held him against a wall;

- he punched holes in the walls of his parent's house;

- he shot a hole in the ceiling;

- he stabbed a bag of potato chips while yelling at his wife;

- he threw a bottle of wine and broke it;

- he broke the window of his son's car;

- he went to strip clubs when his family was having financial problems;

- he called his wife a "bitch";

- he wrote an incoherent and rude Valentine's Day note to his wife;

- he wrote an aggressively worded note to his employees at his auto shop;

- he took his wife's clothes outside and ripped them up;

- he drank too much;

- he over-medicated himself;

- he routinely threatened his family with suicide;

- he was verbally abusive to his wife and employees;

- he fought a police officer on a lake trip and bit the officer's hand;

- he pushed his wife, who fell and struck her chin and knees, while attempting to assault Bruce Thiele;

- he threatened his wife and told her that if she called the police, he would take out two officers, one for himself and one for his brother;

- he stabbed Cammie Olfers in the hand as she protected her face and neck [during the course of the same aggravated assault for which he was convicted];

- he told [his wife] Linda Howard he had "just knocked the shit out of Britney and told [Britney] to leave";

- he was referred to anger management;

- he grabbed his son Andy by the neck and picked him up off the dinner table;

- he called his daughter a "bitch"; and

- he tried to pull down his daughter's swimsuit when he was drunk at a lake.[5]

---

[5] *Ex parte Howard*, No. AP-76,809, 2013 WL 4859010, at *3–4 (Tex. Crim. App. September 11, 2013) (not designated for publication).

In addition to the extraneous-misconduct evidence, the facts of the case were particularly egregious. Howard arrived at his son Bradley's home armed. To Bradley's surprise, Howard suddenly swung his arm, slicing Bradley's arm with a box cutter. Howard then stated, "I'm not through with you" and charged Bradley. Again, citing to the Court's opinion,

> Bradley and [Howard] fought and struggled down a hallway. Bradley tried to stay between [Howard] and Cammie until they reached the computer room at the end of the hallway. Cammie fell onto a bed, and Bradley jumped on top of her to protect her from [Howard]. [Howard] plunged the knife into Bradley's back. Bradley turned around and bear-hugged [Howard], and he stuck the knife into Bradley's back again. Bradley threw [Howard] to the floor, and Cammie and Linda helped subdue him and pry the knife from his hand. Cammie took the knife and the sharpening rod and threw them in the bushes outside of the house. [Howard's other daughter] Britney called 911. While [Howard] was pinned down, Cammie told [Howard] that she could not believe that he would do this to people he was supposed to love. [Howard] answered, "Do you really think I care[?] The person you are and the family you come from, I could care less. You don't think I can find y'all and hunt y'all down?"[6]

In light of the significant extraneous-misconduct evidence and the substantial and uncontested evidence of an egregious attack on a family member, there is not a reasonable probability that he would have received a sentence less than 20 years' confinement had the intoxication-induced insanity evidence been presented.

Beyond the failure to obtain a response from counsel and the substantive determination of the application's merits, my dissent is driven by the majority's ill-considered approach to resolving Howard's application. Reasonable minds may disagree on

---

[6] *Id.* at *1.

an application's merits—whether an applicant has satisfied a particular burden or, like in this case, whether there is a reasonable probability that an outcome would have been different if certain evidence was admitted. However, this Court may not hold that a particular application is subject to a different standard of review once that standard is established. I am disturbed by the Court's increasingly frequent, undisciplined approach to resolving claims on habeas.[7] This matter is but the latest example. Granting Howard a new punishment hearing on this unpleaded assertion solidifies the concerns I expressed in my dissenting opinion to the Court's previous remand, much of which I reiterate here.

Howard's writ application alleged a number of grounds supporting his ineffective-assistance-of-counsel claim. A complaint that counsel's performance was constitutionally deficient at punishment was not among them. By all appearances, Howard has been ably represented by counsel who is board certified in both criminal law and criminal appellate law. If this is truly a claim Howard wished to assert, he could and should have, as this is a burden that rests with the applicant. An applicant has a duty "to allege specific facts so that anyone reading the writ application would understand precisely the factual basis for the legal claim."[8] Even the required official form for all non-death-penalty applications for habeas corpus requires that an applicant "must summarize the facts supporting each ground for

---

[7] *See, e.g., Ex parte Henderson*, 384 S.W.3d 833, 852-53, 858–59 (Tex. Crim. App. 2012) (Keasler, J., dissenting); *Ex parte Medina*, 361 S.W.3d 633, 647 (Tex. Crim. App. 2011) (Keasler, J., dissenting).

[8] *See, e.g., Ex parte Medina*, 361 S.W.3d 633, 637–38 (Tex. Crim. App. 2011).

habeas relief."[9]

Courts should not delve into the record, formulate a new claim for an applicant, and then remand the matter to the habeas judge to investigate and make findings of fact and conclusions of law on that Court-crafted claim. We, of course, are not foreclosed from identifying an injustice that is clearly apparent from the record such that our sense of duty and justice compels us to address it *sua sponte*. Even so, we should do so cautiously so we do not appear to be assuming the role of an advocate and interfere with the adversarial process. This necessary prudence preserves our role as a neutral arbiter.

When the Court reaches out to address unpleaded claims in a manner inconsistent with similarly pleaded applications, it undermines the habeas process and the judicial system generally. Countless applications alleging ineffective-assistance claims, while stating legal claims for relief, have been denied simply because they fail to allege with sufficient specificity why counsel was deficient, and if so, how applicant was prejudiced. These applications are denied without the extraordinary step of remanding to explore some theoretically meritorious, yet unpleaded claim. There is nothing unique about this application that warrants the dramatic deviation from the standard to which we hold every other application.

Although we may not be bound by the strict rigors of precedent or statute in

---

[9] *Id.* at 638.

interpreting an applicant's claim,[10] the same weighty principles underlying stare decisis and fairness require that we review each application the same. Remaining consistent in our treatment of applications for writs of habeas corpus "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."[11] Treating similar applications differently renders the habeas process susceptible to the whims and "proclivities of individuals,"[12] and erodes the public's faith that the judiciary renders judgment impartially and dispassionately.

For the foregoing reasons, I dissent to granting Howard relief.

FILED: April 2, 2014

PUBLISH

---

[10] *But see* TEX. CODE CRIM. PROC. arts. 11.07, § 4 & 11.071, § 5 (prohibiting the review of a subsequent application's merits, but subject to specific exceptions).

[11] *Payne v. Tennessee*, 501 U.S. 808, 827 (1991).

[12] *Vasquez v. Hillery*, 474 U.S. 254, 265–66 (1986).