Per curiam.
This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure, Article 11.071.
Applicant was convicted in 2008 of capital murder committed in March 2007. TEX. PENAL CODE ANN. § 19.03(a). Based on the jury's answers to the special issues set forth in the Texas Code of Criminal Procedure, Article 37.071, sections 2(b) and 2(e), the trial court sentenced him to death. Art. 37.071, § 2(g).[1] This Court affirmed applicant's conviction and sentence on direct *594 appeal. Medina v. State, No. AP-76,036, 2011 WL 378785 (Tex. Crim. App. Jan. 12, 2011) (not designated for publication), cert. denied.
Applicant presented twenty-eight allegations in his application in which he challenges the validity of his conviction and sentence. The trial court held a live evidentiary hearing. As to all of these allegations, the trial judge entered findings of fact and conclusions of law. Except as to Allegation Four, the trial judge concluded that the allegations were without merit and recommended that relief be denied. These findings of fact and conclusions of law are supported by the record.
As to Allegation Four, the trial judge recommended that we grant relief in the form of a new punishment trial because trial counsel's deficient performance in failing to present any punishment-phase case on Applicant's behalf deprived Applicant of his right to a fair trial. The record supports the trial judge's recommendation. Accordingly, we accept the recommendation. We grant relief and remand the cause for a new punishment hearing.
Keasler, J., filed a concurring opinion.
Keller, P.J., filed a dissenting opinion.
Keasler, J., filed a concurring opinion.
I agree that a new punishment hearing is merited in Hector Medina's case, for the reasons given in the Court's order granting relief. I write separately to address two matters: the Section 5 bar in Article 11.071 of the Texas Code of Criminal Procedure,[1] and trial counsel's truly reprehensible conduct in this case.
I. SECTION 5
I dissented to this Court's previous determination that Medina's initial habeas filing was "not a proper writ application under Article 11.071."[2] While I shared the majority's concern that Medina's "one opportunity to seek habeas relief" would be "lost,"[3] I considered it unfair and inconsistent with the Court's practice to give Medina "an opportunity that other similarly situated applicants have been denied."[4] I would have held that Medina's filing indeed constituted an "application," as that term is understood in Article 11.071, such that any subsequent filing-including the present one-would need to overcome the statutory bars to reconsideration contained in Section 5 of Article 11.071.[5] With this understanding, most, if not all, of Medina's present claims should be dismissed with prejudice, because they could have been, but were not, included in his initial filing.[6]
I still believe that affording Medina (what amounts to) a second bite at the apple represented a "drastic reversal of course" from the Court's usual practice of denying insufficiently pled habeas applications on their merits.[7] I also continue to believe that giving Medina the opportunity-with the Court's blessing and encouragement-to correct the deficiencies in his pleadings was fundamentally unfair to the habeas applicants whose similar mistakes were met with no such similar sympathy.[8] Since Medina , as before, we have continued *595 routinely to turn from the doors those habeas applicants whose filings "failed to adequately plead facts" justifying relief.[9]
But I also recognize that this matter was decided some six years ago, and every institutional entity involved in determining the fate of Medina's habeas proceeding has invested countless hours and immeasurable resources in the wake of our initial opinion. If ever there was an occasion to adhere to stare decisis , this is it. I voiced my concerns in our opinion addressing Medina's first filing, but my arguments did not carry the day. So in deference to the Court's initial Medina opinion, I have considered the claims in Medina's present application as though they were brought for the first time in an initial application.
II. TRIAL COUNSEL'S CONDUCT
I must also take a moment to express my profound disgust at the disgraceful punishment-phase "representation" trial counsel provided Hector Medina in this case. When trial counsel was initially denied a three-month continuance at the conclusion of the State's punishment case, she evidently gave the trial judge two options. Either the trial judge could agree to counsel's continuance, or counsel would refuse to put on any evidence whatsoever, and "we can try [the case] again in 10 years"-presumably at the conclusion of Medina's appellate and collateral litigation.[10] When the judge did not relent, counsel, in a brazen attempt to plant the seeds of reversible error, intentionally torpedoed Medina's punishment case in front of the jury. There is some suggestion in the record that she took this approach on advice from colleagues unconnected to the case. She was nevertheless unrepentant, telling the trial judge "I don't care if I lose my law license over [this]."[11] Perhaps even more disgraceful, at no point did she inform Medina of her scheme. Instead, counsel contented herself to say only two words to her client: "Trust me."[12]
Cataloguing all of the ethical and professional lines trial counsel crossed in charting this course without her client's knowledge or consent would consume far more ink than I care to spill on the matter.[13] Suffice it to say, her ludicrous attempt to hold the trial court hostage[14] resulted in a death sentence she was duty-bound, but did shamefully little, to oppose.[15]
It has been almost nine years since counsel declared her outrageous intentions to the trial judge. Counsel's first prediction *596 -that Medina's punishment case would be tried again in ten years-was therefore potentially quite accurate. But if counsel feels any self-satisfaction in this regard, she shouldn't. This long and sordid saga is still far from over. All the witnesses, evidence, and resources expended in his initial punishment hearing must now be marshaled anew. The mother of two murdered children will once again be asked to relive her worst nightmare before a jury of twelve strangers. If there is any justice in this, perhaps trial counsel's second prediction-that post-conviction relief might come at the cost of her law license-will prove as prescient as her first.
It is a bitter task indeed to reward trial counsel's unprofessionalism by giving her what she has apparently wanted all along: a new punishment hearing for Medina. Still, in light of the habeas court's finding that Medina was oblivious to trial counsel's strategy, we should not hold Medina accountable for the decisions of his lawyer.
With these comments, I concur. A copy of this statement shall be sent to Office of the General Counsel of the State Bar of Texas.
Keller, P.J., filed a dissenting opinion.
The habeas court concluded that "the proper analysis of Applicant's claims falls under Cronic ,"[1] obviating a need to conduct an inquiry into prejudice.[2] But in our opinion on Applicant's direct appeal, this Court held that Strickland ,[3] rather than Cronic , controlled because "the only portions of appellant's trial that defense counsel did not participate in were presenting punishment evidence and presenting a jury argument during the punishment phase."[4] Ordinarily, when the defendant has an attorney and that attorney has been afforded the opportunity to prepare, the Cronic presumption of prejudice applies only when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing."[5] Defense counsel did not entirely fail to subject the State's punishment case to meaningful adversarial testing because she fully participated in the State's punishment case, including cross-examining witnesses. For this reason, the Supreme Court's more recent holding in Lee also does not apply because Applicant has not been deprived of an entire proceeding.[6] Because our holding on direct appeal is the "law of the case,"[7] the habeas court erred to rely upon Cronic . Counsel's conduct must be evaluated under Strickland 's prejudice prong, and the habeas court has not done that. I would remand for findings on the issue of prejudice.
I respectfully dissent.

Unless otherwise indicated, all references to Articles are to the Texas Code of Criminal Procedure.

Tex. Code Crim. Proc. art. 11.071 § 5.

Ex parte Medina , 361 S.W.3d 633, 635 (Tex. Crim. App. 2011).

Id. at 647 (Keasler, J., dissenting).

Id. at 649 (Keasler, J., dissenting).

Tex. Code Crim. Proc. art. 11.071 § 5.

Id. § 5(a)(1).

Medina , 361 S.W.3d at 649 (Keasler, J., dissenting).

Id. at 647 (Keasler, J., dissenting).

Id. (Keasler, J., dissenting).

Findings of Fact and Conclusions of Law at 19, Ex parte Hector Rolando Medina , No. W07-32923-S(A) (282nd Dist. Ct., Dallas County, Tex. Dec. 30, 2016).

Id.

Id. at 24.

But see, e.g. , Tex. Disciplinary Rules Prof'l Conduct preamble ¶ 2 ("As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications."); Guidelines and Standards for Texas Capital Counsel , Guideline 10.2(C) ("Counsel at all stages of the case should engage in a continuing interactive dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case[.]").

See Tex. Disciplinary Rules Prof'l Conduct preamble ¶ 4 ("While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process."); id. at R. 3.02 ("In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter.").

See id. at R. 3.01 cmt. 1 ("The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure.").

United States v. Cronic , 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

See Finding (10).

Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Medina v. State , AP-76,036, 2011 WL 378785, *13, 2011 Tex. Crim. App. Unpub. LEXIS 1, * 38-39 (Tex. Crim. App. January 12, 2011) (not designated for publication).

Cronic , 466 U.S. at 659-60, 104 S.Ct. 2039.

See Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1965, 198 L.Ed.2d 476 (2017) ("But in this case counsel's 'deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself.' ").

State v. Swearingen , 478 S.W.3d 716, 720 (Tex. Crim. App. 2015) ("According to that ['law of the case'] doctrine, 'an appellate court's resolution of questions of law in a previous appeal are binding in subsequent appeals concerning the same issue.' ").