

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-62,426-04

### EX PARTE JUAN CARLOS ALVAREZ, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. 787007 FROM THE
### 338TH DISTRICT COURT OF HARRIS COUNTY

YEARY, J., filed a concurring opinion in which JOHNSON and NEWELL, JJ., joined.

### CONCURRING OPINION

This is a subsequent post-conviction application for writ of habeas corpus, brought

pursuant to Article 11.071, Section 5 of the Texas Code of Criminal Procedure. TEX. CODE

CRIM. PROC. art. 11.071, § 5. Such writ applications are ordinarily permitted only under

limited circumstances, such as the availability of new law or facts that initial state habeas

applicants cannot have known to rely upon in an initial or previously considered writ

application, *id*. § 5(a)(1), or a claim that, but for the subsequently complained-of

constitutional violation, no rational jury could have found him guilty or would have assessed

the death penalty, *id*. § 5(a)(2) & (3). Applicant alleges a different basis to try to justify his subsequent writ application. He argues that, but for the ineffectiveness of his initial state habeas attorney, he could have asserted a "robust" claim of ineffective assistance of trial counsel in his initial application.

The Court today dismisses Applicant's subsequent writ application as abusive—failing to satisfy the criteria for a subsequent writ as set out in Article 11.071, Section 5(a). Court's Order at 2. Although the Court's order does not say so, in dismissing Applicant's subsequent writ application, the Court rejects his argument that we should revisit *Ex parte Graves*, 70 S.W.3d 103 (Tex. Crim. App. 2002), in light of recent United States Supreme Court decisions in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). The Court also implicitly rejects his alternative argument that we should treat the present writ application as his first, consistent with our holding in *Ex parte Medina*, 361 S.W.3d 633 (Tex. Crim. App. 2011). For reasons upon which I will elaborate, I am sympathetic to the argument that we should reexamine *Graves*—particularly in light of the Court's subsequent opinion in *Medina*. But, as I shall explain, my sympathies do not lead me to conclude that Applicant is entitled to relief in this case.

## APPLICANT'S ALLEGATIONS

I will not dwell on Applicant's present claim any further than to say that he alleges specific facts that are adequate to establish, if true, both: 1) the ineffective assistance of his trial counsel—at *least* in failing to investigate the existence of substantial mitigating evidence

as required under *Wiggins v. Smith*, 539 U.S. 510 (2003) (if not otherwise); and 2) the ineffective assistance of his initial post-conviction habeas attorney in failing to conduct the mitigation investigation that trial counsel should have conducted so that initial state habeas counsel would be able to plead and prove ineffective assistance of trial counsel in Applicant's initial writ application. Applicant has "demonstrate[d] that [his] underlying ineffective-assistance-of-counsel claim is a substantial one, which is to say that [he has] demonstrate[d] that the claim has some merit." *Martinez*, 132 S.Ct. at 1318, 1320, 1321; *Trevino*, 133 S.Ct. at 1914, 1921. Suffice it to say that I am persuaded that, should this Court refuse to reach the merits of Applicant's claim of ineffective assistance of trial counsel, the federal courts may do so, and indeed may conduct their own review *de novo*, not deferentially (since there is no state decision on the merits to defer to), under *Martinez/Trevino*. Applicant argues that, under these circumstances, he ought to be allowed to raise his claim of ineffective trial counsel for the first time in a subsequent state writ application. He acknowledges that our holding in *Graves* stands in his way, but asks that we reconsider *Graves*, if only for the sake of federalism, in light of recent developments. At some point I believe that we should.

## *GRAVES*

In *Graves*, decided in 2002, we addressed the question whether the applicant could raise, in a subsequent writ application under Article 11.071, "a claim of ineffective assistance by his first habeas counsel[.]" 70 S.W.3d at 110. We rejected the applicant's attempt to raise

such a claim in a second collateral attack "for a number of reasons." First, we recognized precedent from the United States Supreme Court to the effect that, because there is no constitutionally endowed right to counsel during post-conviction habeas corpus proceedings, even in capital cases, there can therefore be no concomitant Sixth Amendment right to *effective* counsel in such proceedings. *Id.* at 111 ("If a convicted person has no constitutional right to appointment of *any* counsel in a post-conviction habeas corpus proceeding, it inevitably follows that he cannot claim constitutionally ineffective assistance of counsel in that proceeding."). Thus, there was no constitutional basis for a free-standing claim of ineffective assistance of initial state habeas counsel. *Id.* at 113 ("Absent such a constitutional right to counsel, there can be no constitutional right to effective assistance of counsel in a habeas proceeding.").

Second, the Court rejected the applicant's assertion that, because Article 11.071, Section 2(a) requires representation of death row inmates by "competent counsel," "he is entitled to bring a subsequent writ complaining of counsel's deficient performance." *Id*.; TEX. CODE CRIM. PROC. art. 11.071, § 2(a). *Graves* held that the statute plainly refers to the qualifications of the appointed attorney at the time of the appointment—that the statutory guarantee of "competent counsel" only "concerns habeas counsel's qualifications, experience, and abilities at the time of his appointment." *Id*. at 114. Any contrary holding, we worried, would "eviscerate" Article 11.071, Section 5's abuse-of-the-writ provisions and turn it "into a perpetual motion machine" for generating endless subsequent writ applications.

*Id*., at 114-15 ("A claim of ineffective assistance of prior habeas counsel would simply be the gateway through which endless and repetitious writs would resurrect."). We held it to be beyond our judicial authority to engraft such a "fourth exception" to Section 5's general prohibition against subsequent writ applications. *Id*. at 115.

In any event, a claim that initial state habeas counsel was ineffective does not challenge the capital conviction or the death sentence. "It is merely a 'gateway' device used to allow an inmate to resurrect a procedurally defaulted claim which he failed to bring at the proper time." *Id*. at 117. For these reasons, we ultimately concluded that Article 11.071, Section 2, while it assures the death row inmate of the "appointment of competent counsel," nevertheless provides him no basis for a subsequent writ application even if that competent counsel actually performs incompetently. *Id*. In my view, recent developments in federal habeas procedure, as well as, to a certain extent, the rationale underlying those new developments, counsel that the Court should revisit the holdings of *Graves*.

### *MARTINEZ/TREVINO*

In *Martinez*, the federal habeas applicant argued that he should be able to raise the ineffectiveness of his initial state habeas counsel in federal habeas proceedings because initial state habeas counsel had performed in a constitutionally deficient manner, causing him to forfeit a claim of ineffective assistance of trial counsel for federal habeas review. The Supreme Court chose to eschew the constitutional question, however. Instead, it narrowed the issue to ask "whether a federal habeas court may excuse a procedural default of an

ineffective-assistance [of trial counsel] claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding." 132 S.Ct. at 1313. It answered this question in the affirmative: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. In *Trevino*, which held that the holding of *Martinez* applies to Texas convictions, the Supreme Court summarized the conditions that would give rise to such a "cause" for excusing a state-level forfeiture:

> where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial review collateral proceeding."

133 S.Ct. at 1918 (citing *Martinez*, 132 S.Ct. at 1318-19, 1320-21).

In justification for this exception to the usual federal deference to state rules of procedural default, the Supreme Court recognized that, at least with respect to claims that may effectively be raised for the first time only in initial post-conviction collateral review, the effective assistance of legal counsel (whether constitutionally mandated or not) is of paramount importance—as critical as the right to effective counsel on direct appeal.

> Where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim. This is because the state habeas court looks to the merits of the claim of ineffective assistance, no other

court has addressed the claim, and defendants pursuing first-tier review are generally ill equipped to represent themselves because they do not have a brief from counsel or an opinion of the court addressing their claim of error.

> [A]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims. Without the help of an adequate attorney, a prisoner will have similar difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim. Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy. When the issue cannot be raised on direct review, moreover, a prisoner asserting an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding cannot rely on a court opinion or the prior work of an attorney addressing that claim. To present a claim of ineffective assistance at trial in accordance with the State's procedures, then, a prisoner likely needs an effective attorney.

132 S.Ct. 1317 (internal citations, ellipses, and brackets omitted). Thus, although there is (as yet) no constitutionally recognized right to counsel for post-conviction proceedings, the advisability of the participation of counsel at that stage—at least for claims that can be raised for the first time only at that stage—is as urgent as on direct appeal, where there is a constitutional right to counsel (and indeed, constitutionally *effective* counsel) so long as a state provides for direct appellate review. *Evitts v. Lucey*, 469 U.S. 387, 400-01 (1985).

## CONSTITUTIONAL RIGHT TO COUNSEL

Still, there is no recognized *constitutional* right to counsel for what the Supreme Court in *Martinez* called "initial-review collateral proceedings." That is to say, *Evitts v. Lucey* notwithstanding, as of the present time, a state post-conviction habeas corpus applicant such

as Applicant (even in a capital case) has no constitutional right to the assistance of counsel, even with respect to claims that he can raise only for the first time in those proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Murray v. Giarratano*, 492 U.S. 1, 10 (1989); *cf. Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991). And the absence of a right to counsel in a post-conviction writ application would seem to rule out any derivative right to *effective* counsel. *See Finley*, 481 U.S. at 558 (*Evitts*'s recognition of the right to effective counsel on appeal "depends on a constitutional right to appointed counsel that does not exist in state habeas proceedings"); *Graves*, 70 S.W.3d at 111 & n.30.

I would maintain that, in initial-review collateral proceedings, there yet may exist a right to effective assistance of counsel that derives from the Fourteenth Amendment guarantee of due process. As *Martinez* convincingly illustrates, the *need* for effective counsel to raise claims that can be raised effectively only in post-conviction proceedings is as great as is the need for counsel to effectively assist on direct appeal. It is true that the Supreme Court has explicitly recognized a right to counsel on appeal, from which a right to *effective* counsel flows. There is no concomitant right to counsel in a post-conviction writ proceeding. But there is an unequivocal and absolute *statutory* right to counsel (indeed, "competent counsel") for death row inmates in Texas under Article 11.071. The right to effective assistance of appellate counsel that *Evitts v. Lucey* recognized was a function of the due process "entitlement doctrine":

In short, when a State opts to act in a field where its action has significant

discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause.

469 U.S. at 401. There is no constitutional requirement that states provide an avenue of direct appeal for criminal defendants. *McKane v. Durston*, 153 U.S. 684 (1894). But those states that do must afford the appellant the right to counsel on appeal. *Douglas v. California*, 372 U.S. 353 (1963). *Evitts v. Lucey* held this due process requirement would be but "a futile gesture unless it comprehended the right to the effective assistance of counsel." 469 U.S. at 397. Thus, having granted an absolute right of appeal (if only by state law), Kentucky was obligated by due process to grant Lucey, not just counsel, but effective counsel. To arbitrarily take away the due process right to counsel by tolerating counsel who was ineffective was recognized to be, itself, a violation of due process. *Id*. at 404.

Texas is not required by the federal constitution to provide post-conviction habeas corpus proceedings; nor is it required to provide counsel for those inmates who wish to take advantage of the post-conviction habeas corpus proceedings that Texas in fact provides. *See Finley*, 481 U.S. at 557 (post-conviction habeas "is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief . . . and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well"). But in the context of capital cases, Texas has chosen unequivocally to provide both. Having provided those absolute rights, albeit by state law, it

may not arbitrarily take them away without impinging on the applicant's due process rights.

That is the essence of the Supreme Court's entitlement doctrine. *Evitts v. Lucey*, 469 U.S.

at 400-01. *See also, Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (appellate court's denial

of appellant's statutory right to a jury determination of punishment within the statutory range

was not merely a matter or "exclusively state concern" but implicated a liberty interest "that

the Fourteenth Amendment preserves against arbitrary deprivation by the State"). It is

arguable that the statutory right to counsel to which Article 11.071, Section 2(a), entitles

Applicant would be taken from him arbitrarily, in violation of due process, if it does not

embrace the right to *effective* counsel—at least for those claims that can be raised only for

the first time in post-conviction proceedings. After all, as *Martinez* now establishes, in that

context the need for effective counsel is as great as the need for effective counsel on direct

appeal.[1]

---

[1] Indeed, under Article 11.071, Section 4, state post-conviction habeas proceedings in capital cases run concurrently with the direct appeal. *See* TEX. CODE CRIM. PROC. art. 11.071, § 4(a) (providing for the filing of the writ application within six months of the appointment of habeas counsel by the convicting court, or no later than 45 days after the State files its reply brief on direct appeal, whichever comes first). Thus, not only has the Legislature expressly provided that capital inmates "shall be represented by counsel," it has also made the post-conviction habeas proceedings contemporaneous with the direct appeal. This is in stark contrast to non-capital habeas proceedings, which do not even begin until the conviction is rendered final with the issuance of an appellate mandate. *See* TEX. CODE CRIM. PROC. art. 11.07, § 3(a) ("After final conviction in any felony case . . ."); *Ex parte Webb*, 270 S.W.3d 108, 111 (Tex. Crim. App. 2008) ("It has long been the rule that a conviction from which an appeal has been taken is final for the purposes of Article 11.07 when the clerk of the court of appeals issues that court's mandate."). For these reasons, capital post-conviction proceedings seem to have taken on the characteristics of a special appeal—albeit one in which resort may be made to evidence beyond the appellate record. All of this leads me to believe that the Legislature intended for our statutory post-conviction habeas corpus remedy in Texas death penalty cases to be really a kind of hybrid appeal rather than a true "habeas" collateral review proceeding as

It is true that in *Murray v. Giarratano*, the Supreme Court rejected the argument that capital inmates have a constitutional right to counsel in state post-conviction habeas proceedings in Virginia. 492 U.S. at 10. But Virginia had no statute that provided an absolute statutory right to state habeas counsel in capital cases of which the applicant could be arbitrarily deprived. By contrast, Article 11.071 expressly provides such a right, and to arbitrarily deprive a capital inmate of that right in Texas by tolerating ineffective assistance of that statutorily endowed counsel arguably violates due process.

## STATUTORY CONSTRUCTION

In any event, at some point the Court should reconsider *Graves*'s construction of "competent counsel" as meaning nothing more than counsel with the requisite "qualifications, experience, and abilities at the time of his appointment." 70 S.W.3d at 114. Significantly, Article 11.071, Section 2(a), does not provide merely for "the appointment" of competent counsel. It mandates that death row applicants actually "be represented by competent counsel," which would seem to contemplate an on-going enterprise. TEX. CODE CRIM. PROC. art. 11.071, § 2(a). While this phrase does not necessarily endow a right to *effective* representation, neither does it plainly dispense with such a right, as *Graves* (in my view, mistakenly) held that it does.

It makes little sense for the Legislature to recognize the need for an attorney who is

_____

those proceedings have been understood in the past. Thinking of it in that light, I believe, lends weight to the argument that due process would prohibit the State from granting capital litigants the right to appointed counsel but then arbitrarily denying them counsel who will perform effectively.

competent—that is to say, who has the "qualifications, experience, and ability" to conduct the daunting factual investigation and to navigate the often-byzantine law involved in post-conviction habeas corpus representation—with no expectation that he would then actually *provide* his client with competent post-conviction habeas corpus representation. Indeed, Article 11.071, Section 3(a), expressly provides that, "[o]n appointment, counsel shall investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus." Article 11.071 as a whole contemplates more than just the appointment of an attorney who is *capable* of providing competent representation *if he chooses to do so*. If it did not, then the statutory right to counsel would be no less of a "futile gesture" than a constitutional right to counsel that does not "comprehend[] the right to the effective assistance of counsel." *Evitts v. Lucey*, 469 U.S. at 397. I cannot believe that the Legislature would have intended such a futile gesture. Nor can I accept that the Legislature would tolerate the happenstance that some competent attorneys would actually do an adequate job while other competent but less conscientious attorneys would not. That would engender just the kind of arbitrary deprivation of a statutory right that the entitlement doctrine disfavors, and we should avoid statutory interpretation that invites such a constitutional conflict.[2]

_____

[2] *See* TEX. GOV'T CODE § 311.021(1) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended[.]"). The Code Construction Act applies to Article 11.071. *See* TEX. GOV'T CODE § 311.002(2) ("This Chapter applies to . . . each amendment, repeal, revision, and reenactment of a code or code provision by the 60th or a subsequent legislature."). Article 11.071 was enacted by the 74th Legislature.

*Graves* itself acknowledged that the Legistature's intent in enacting Article 11.071 was to permit "*one full and fair opportunity* to present all . . . claims in a single, comprehensive post-conviction writ of habeas corpus[.]" 70 S.W.3d at 117 (emphasis added). This overarching legislative purpose is ill-served when counsel representing death row inmates need only be theoretically competent at the time of appointment, but not actually competent during the course of the representation itself.

## EVISCERATING SECTION 5?

But what of *Graves*'s concern that requiring effective post-conviction habeas counsel will thwart the intent of the Legislature in enacting Section 5's abuse of the writ provisions of Article 11.071? 70 S.W.3d at 114-15. I do not share that concern. The intent of Section 5 was to limit capital habeas applicants to one full and fair opportunity to present all existing claims in one comprehensive document. Any applicant who has had that one opportunity must navigate Section 5's strict gateway if he wants to avail himself of a second opportunity. But the applicant whose initial post-conviction habeas counsel performed ineffectively did not receive that first full and fair opportunity that Section 5 presupposes.

It has been suggested that we could construe Section 5(a)(1) to accommodate the claim that ineffective assistance of initial state habeas counsel constitutes a new factual basis for a writ application, thus authorizing a subsequent proceeding. *Graves*, 70 S.W.3d at 121 (Price, J., dissenting). I do not find this construction feasible, however, because Article 11.071, Section 5(a)(1), as a whole, clearly contemplates new facts to establish a "claim" that

calls into question the validity of the conviction or death sentence,[3] which a claim of ineffectiveness of initial state habeas counsel does not do. But that does not mean we are without recourse. In other contexts we have permitted applicants to file late or essentially subsequent applications outside the bounds of Section 5.

### *MEDINA*

For example, we have not hesitated to relieve death row applicants of initial state habeas attorneys who have deliberately shirked their duty. When initial state habeas counsel files a purported application for writ of habeas corpus that deliberately fails to state facts entitling the applicant to relief, such a document, we said in *Medina*, 361 S.W.3d at 640, "is not a proper 'application' for a writ of habeas corpus." For that reason, we permitted Medina to file another without regarding it as a subsequent writ application, on authority of Article

---

[3] *See* TEX. CODE CRIM. PROC. art. 11.071, § 1 ("Notwithstanding any other provisions of this chapter, this article establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death."); *id*. § 5(a)(1) ("If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that . . . the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article . . . because the factual . . . basis for the claim was unavailable on the date the applicant filed the previous application."); *Ex parte Alba*, 256 S.W.3d 682, 687 (Tex. Crim. App. 2008) ("Applicant has not brought forth any claims attacking the legality of his conviction or sentence [of death] and has not raised any issues which, if resolved in his favor, would entitle him to a new trial or a new sentencing hearing. Therefore, Applicant's claim is not cognizable under Article 11.071."); *Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007) ("[T]o satisfy Art. 11.071, § 5(a), 1) the factual . . . basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence.").

11.071, Section 4A(a), which permits this Court to appoint new counsel when initial state habeas counsel, though "competent" when appointed, "fails to file an application before the filing date" prescribed by statute. *Id*. at 643; TEX. CODE CRIM. PROC. art. 11.071, § 4A(a). Along the way, we observed:

> Applicant, because of his counsel's intentional refusal to plead specific facts that might support habeas-corpus relief, has not had his "one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of [Article 11.071]." Not full because he is entitled to one bite at the apple, i.e., one application, and the document filed was not a proper writ application. Not fair because applicant's opportunity, through no fault of his own, was intentionally subverted by his habeas counsel.

361 S.W.3d at 642. We emphasized that the circumstances justifying our action in *Medina* were "unique and extraordinary," involving not a lack of competence but a "Machiavellian strategy designed to thwart the proper statutory procedure for filing a death penalty writ." *Id*. at 643 (quoting the State's response).

It is not apparent to me that *Medina*'s attempt at a limiting principle withstands scrutiny. How is it objectively less fair to a capital habeas applicant that he has been deprived of his one full and fair opportunity at comprehensive habeas review by the incompetency—as opposed to the deliberate gamesmanship—of his initial state habeas counsel? Either way, he suffers "through no fault of his own." *Id*. at 642. Whether a document pleads sufficient specific facts so as to constitute a "writ application" in contemplation of Article 11.071 cannot reasonably be made to turn on the good faith of the attorney who prepared it—it is either sufficiently well drawn or it is not. Such a document cannot be regarded as a writ

application when competent counsel perniciously omits sufficiently specific facts but not a writ application when the facts are left out because of competent counsel's plainly incompetent representation.

Initial state habeas counsel in this case filed a twenty-five-page document. It contained three claims for relief. All three claims were based on nothing beyond the appellate record and could have been brought on direct appeal. Counsel conducted no extra-record investigation, and so was in no position to raise legitimately cognizable post-conviction claims, including what appears to me to be Applicant's substantial *Wiggins* claim. Moreover, it appears that initial state habeas counsel may have had a history of filing capital writ applications of this kind, several raising essentially the same three claims he brought in Applicant's initial application. An applicant whose attorney takes such a cookie-cutter approach to post-conviction habeas corpus cannot be said to have been "represented by competent counsel" for purposes of Article 11.071, Section 2(a). And in the absence of representation by competent counsel, it cannot be said that Applicant has been afforded his one full and fair opportunity to challenge his conviction or punishment in post-conviction habeas corpus proceedings.

## FEDERALISM

Reinterpreting *Graves*'s interpretation of "competent counsel" may have the added benefit of ensuring state review of claims of ineffective assistance of trial counsel, so that as many such claims as possible will be conducted according to the deference required by the

Antiterrorism and Effective Death Penalty Act rather than *de novo*. 28 U.S.C. § 2254(d). After *Martinez* and *Trevino*, many such claims will be reviewed in federal court whether or not this Court first passes on them, since a federal petitioner who can establish ineffectiveness of his initial state habeas counsel will be able to establish "cause" for his failure to raise ineffective trial counsel in his initial state habeas proceedings. Principles of federalism counsel in favor of Texas making the first determination of the merits of any such ineffective trial counsel claim, so that federal review will remain as deferential as possible to our judgments.

### *STARE DECISIS*

I do not suggest that we undertake lightly the overruling of *Graves*. But the argument has been made before that we should revisit it, endorsed by at least three members of the Court. *See Ex parte Buck*, 418 S.W.3d 98, 113 (Tex. Crim. App. 2013) (Alcala, J., dissenting, joined by Price and Johnson, JJ.).

> Some factors supporting the overruling of precedent are: (1) that the original rule or decision was flawed from the outset, (2) that the rule's application produces inconsistent results, (3) that the rule conflicts with other precedent, especially when the other precedent is newer and more soundly reasoned, (4) that the rule regularly produces results that are unjust, that are unanticipated by the principle underlying the rule, or that place unnecessary burdens on the system, and (5) that the reasons that support the rule have been undercut by the passage of time.

*Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex. Crim. App. 2007) (footnotes with citations omitted). An argument can be made under most of these factors for overruling *Graves*.

First, a substantial argument can been made that *Graves*'s construction of "competent counsel" was flawed from the outset. It seems to conflict with the Court's later decision in *Medina*—in spirit if not in letter. It certainly seems "unjust" to be open to considering a second chance at a full and fair opportunity for meaningful post-conviction review to Medina but not to other applicants whose initial post-conviction habeas counsel performed deficiently. And, while *Martinez* and *Trevino* do not dictate that *Graves* be overruled, they have opened a door to federal intrusion made possible by *Graves*'s holding.

## NEVER-ENDING WRIT APPLICATIONS

Would recognizing ineffective assistance of initial post-conviction counsel create "a perpetual motion machine" for the generation of "endless and repetitious writs"? *Graves*, 70 S.W.3d at 114-15. As a practical matter, I doubt it. Once an applicant has pursued his first writ with presumably competent counsel, the applicant will not receive additional funds to pursue a second application unless and until he has actually prepared that second application, filed it, and obtained permission from this Court to proceed with it. *See* TEX. CODE CRIM. PROC. art. 11.071, § 6(b-1), (b-2) (providing for attorney compensation and reimbursement for expenses for subsequent writ applications only after permission to proceed has been granted by this Court). It is perhaps possible that this Court will be "flooded" with *first* subsequent applications (probably from federal habeas counsel who have received federal funding) alleging that initial habeas counsel was ineffective. But it is likely that most of these will fail to establish a substantial claim that both initial state habeas counsel *and* trial counsel

were ineffective. In that event, this Court can simply dismiss them as abusive under Article 11.071, Section 5. We need treat only those relatively few subsequent applications that do present a *prima facie* case for ineffectiveness of both initial state habeas counsel and trial counsel as initial state habeas writs consistent with our approach in *Medina*.

Moreover, any *subsequent* subsequent writ application that tries to complain of the ineffectiveness of initial state habeas counsel will fail. That is to say, a *second* subsequent writ application that tries to complain of the ineffectiveness of initial state habeas counsel, and any other writ application after *that* one that tries to complain of the ineffectiveness of initial state habeas counsel, we can simply dismiss out of hand. After all, Article 11.071, Section 2, grants an applicant only the right to be "represented by competent counsel" in his *initial* writ application. It does not guarantee competent representation in any subsequent writ application, and if an applicant fails to complain of the effectiveness of his initial state habeas counsel in his *first* subsequent writ application, he then forever procedurally defaults that complaint. He cannot raise it in any *subsequent* subsequent writ application. Thus, the motion of the machine is *not* perpetual, and it will continue to operate as the Legislature intended.

## THE PRESENT CASE

That brings me to the reason that I ultimately agree that the Court should dismiss the instant subsequent writ application. This is not Applicant's first subsequent writ application. He filed his first subsequent writ application in 2010, raising several claims of prosecutorial

misconduct. This first subsequent writ application was filed by the same counsel who has filed Applicant's current, second subsequent writ application. There is no reason Applicant could not have also raised a *Wiggins* claim at that time—in his *first* subsequent writ application. It is true that neither *Martinez/Trevino* nor *Medina* had been decided by 2010, so Applicant lacked much of the fodder for his argument that *Graves* should be overruled. But even now, Applicant does not simply argue that *Graves* should be overruled. He also make a different, alternative argument for why this Court should reach his *Wiggins* claim for the first time in his second subsequent writ application—one that he could just as readily have made in his *first* subsequent writ application. He argues that his initial habeas counsel's history of filing patently inadequate initial writ applications is so substantial, it establishes that he was not "competent" to handle capital post-conviction writ applications even at the time of his appointment, as mandated by *Graves* itself. Applicant's Second Subsequent Writ Application at 32-34. This argument was no less compelling in 2010 than it is today, and yet Applicant did not make it at the time of his first subsequent writ application. Applicant is not entitled to the effective assistance of *subsequent* state habeas counsel—even under Article 11.071. And he has offered no viable explanation why, at the time he filed his first subsequent writ application in 2010, he did not: 1) raise the *Wiggins* claim; and 2) argue that he was entitled to raise the *Wiggins* claim in his *first* subsequent writ application because his initial state habeas counsel was not even the "competent" counsel envisioned by *Graves*. As I see it, because Applicant could have raised this claim in 2010 but did not, it has now been

procedurally defaulted.

## CONCLUSION

Though I am not unsympathetic to the argument that the Court should at some point revisit *Graves*, even if we did so in the present case, in accordance with my view, it would not make a difference in the outcome for Applicant. I therefore concur in the Court's judgment to dismiss the instant application as abusive under Article 11.071, Section 5.


FILED:          April 29, 2015
PUBLISH