WR-26,178-03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/26/2015 3:31:51 PM
Accepted 5/27/2015 9:04:12 AM
ABEL ACOSTA
CLERK

**IN THE**
**TEXAS COURT OF CRIMINAL APPEALS**

RECEIVED
COURT OF CRIMINAL APPEALS
5/27/2015
ABEL ACOSTA, CLERK

Ex parte ARTHUR BROWN, JR.  §  §  §  §  §      Cause No. WR-26,178-03

### *MOTION REQUESTING COURT TO FILE AND SET CAUSE*

NOW COMES, Applicant, Arthur Brown, Jr. ("Mr. Brown"), and files this motion requesting that the Court file and set this cause on the important and pressing issue whether the Court will reconsider *Ex parte Graves*, 70 S.W.3d 103 (Tex. Crim. App. 2002), and apply the equitable principles set out in the recent and groundbreaking decisions in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), to allow the filing of a subsequent application for writ of habeas corpus alleging a substantial claim of ineffective assistance of trial counsel ("IATC"). In support of this motion, Mr. Brown would show the Court the following:

### I. Introduction

Mr. Brown was convicted of capital murder and sentenced to death in November 1993. After his conviction and sentence were affirmed on direct appeal and his claims in state and federal post-conviction proceedings were denied, the trial court set an execution date for October 29, 2013. The trial court subsequently withdrew the execution date in order to allow Mr. Brown to retest ballistics evidence that the State used to obtain a conviction. On October 29, 2014, Mr. Brown filed a subsequent application for writ of habeas corpus in the trial court. *See Subsequent Application for Writ of Habeas Corpus Filed in Accordance with Article 11.071, Section 5, Texas Code of Criminal Procedure* [hereinafter *Subsequent Habeas Application*]. Mr. Brown

asserted that the State presented false testimony and withheld favorable and material evidence in violation of Mr. Brown's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He also asserted that he was denied his Sixth Amendment right to counsel because his trial counsel provided ineffective assistance by failing to investigate mitigation evidence for use in the punishment phase of the trial.[1] This application is now pending before the Court to determine whether it complies with Article 11.071, § 5(a), of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. P., art. 11.071, § 5(c).

In the writ application, Mr. Brown acknowledged that he could not satisfy any of the § 5(a) requirements with respect to the *Wiggins* claim, given the Court's current construction of the provision; however, he urged the Court to reconsider *Graves*, as well as *Ex parte Davis*, 947 S.W.2d 216 (Tex. Crim. App. 1996), in which the Court upheld § 5(a) against a claim that it unconstitutionally suspended the writ with respect to subsequent writ applications. *See Subsequent Writ Application*, at 9-35. Recently, three judges of this Court expressed sympathy with the argument that the Court should reconsider *Graves* in order to allow Texas courts to adjudicate, in the first instance, substantial but otherwise defaulted IATC claims, thus restoring the deferential review scheme for federal court review of this claims, as embodied in 28 U.S.C. § 2254(d). *See Ex Parte Alvarez*, No. WR-62,426-04, 2015 WL 1956254, *1 (Tex. Crim. App. Apr. 29, 2015) (Yeary, J., joined by Johnson & Newll, JJ., concurring) ("I am sympathetic to the argument that we should reexamine *Graves* . . . ."). Though the concurrence believed the time had come for the Court to take up this important and pressing issue, the judges agreed that *Alvarez* was not a proper case for resolving it because the petitioner presented his IATC claims in a *second* subsequent writ application and provided no explanation for why he could not have pressed the claim in the *first* subsequent writ application filed previously. *Id*. at *9. Unlike

---

[1] This species of claim is often referred to as a *Wiggins* claim. *See Wiggins v. Smith*, 539 U.S. 510 (2003).

2

*Alvarez*, Mr. Brown's case provides an ideal vehicle for this Court to consider this issue—this is the first subsequent writ application,[2] which raises both a substantial IATC claim and significant evidence that the original state habeas attorney provided ineffective assistance in failing to investigate the *Wiggins* claim and support it with fully developed evidence.

Given the importance of the issue to this State's death penalty jurisprudence and the ideal nature of this case for addressing it, this Court should set this cause, order any additional briefing that the Court may deem necessary, and permit the parties to present the issues in oral argument. *See* TEX. CODE CRIM. P., art. 11.071, § 11 ("The court of criminal appeals shall expeditiously review all applications for a writ of habeas corpus submitted under this article. The court may set the cause for oral argument and may request further briefing of the issues by the applicant or the state."). *See also Ex parte Briseño*, 135 S.W.3d 1, 11 n.43 (Tex. Crim. App. 2004).

## II. Discussion

A.    The interplay of this Court's continued commitment to *Graves* with the equitable exception to federal procedural default doctrine in *Martinez* and *Trevino* gives rise to a federalism dilemma in which defaulted IATC claims can receive *de novo* review in federal court without any prior state court consideration.

In *Martinez*, the Supreme Court created an equitable exception[3] to the general rule, set out in *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991), that ineffective assistance of state habeas counsel could not provide cause to excuse the default of a claim in state court. "This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of

---

[2]    Though the cause number assigned to this case designates it as "-03," Mr. Brown's first writ application under Article 11.071 received a designation "-02." The "-01" cause number relates to a mandamus action filed in 1994.

[3]    The Court declined to reach the constitutional question left open in *Coleman* whether there might be a constitutional right to counsel in state post-conviction proceedings when those proceedings represented the first opportunity to raise an IATC claim. *Martinez v. Ryan*, 132 S. Ct. at 1315. Thus, it remains an open question whether the Constitution might impose a right to counsel, whether sourced in the Sixth Amendment guarantee of counsel or in the Due Process Clause, in first round post-conviction proceedings in order to develop and present a potential IATC claim.

a claim of ineffective assistance at trial." *Martinez v. Ryan*, 132 S. C.t at 1315. The Court expressly limited the exception to IATC claims that could only be raised, as a practical matter, in initial state post-conviction proceedings. *Id*. Because adjudication of IATC claims bypassed direct appellate review and occurred at a point in which there was no constitutionally guaranteed right to counsel, the Court was primarily concerned that violations of the right to counsel, which the Court characterized as the fundamental, bedrock principle underlying the proper functioning of the entire criminal justice system, could escape review at any level—in both state and federal court—unless an exception to the usual rules of procedural default were created. *Id*. at 1317-18. In *Trevino*, the Court held that the *Martinez* exception applied to Texas cases, given that this Court actively discouraged raising IATC claims in direct review and effectively routed virtually all such claims to state post-conviction proceedings for initial and exclusive review. *Trevino v. Thaler*, 133 S. Ct. at 1920. Thus, *Martinez* and *Trevino* recognized that the right to counsel is not only singularly important in ensuring the fairness of criminal trials and the production of reliable results, violations of the right are singularly unique in that the enforcement mechanism is fixed at a point in the proceedings when there is no constitutionally guaranteed right to counsel. This circumstance placed the necessary judicial remedy in jeopardy as a systemic matter.

In *Graves*, this Court held that ineffective assistance of state habeas counsel could not constitute an independent, cognizable claim under Article 11.071, § 5(a)(1). *Ex parte Graves*, 70 S.W.3d at 104-05. Essentially, because there was no "right" to counsel in post-conviction proceedings, there could be no cognizable "claim" in 11.071 proceedings. Prior to *Graves*, the Supreme Court, in *Murry v. Giarratano*, 492 U.S. 1 (1989), and *Pennsylvania v. Finley*, 481 U.S. 551 (1987), had held that a capitally sentenced habeas petitioner, as a general rule, did not have a constitutional right to effective assistance of counsel in state habeas proceedings, and this Court

4

held in *Graves* that Article 11.071, § 2(a), which guaranteed "competent" rather than "effective" counsel, did not create a statutory right to effective assistance of counsel. 70 S.W.3d at 113-17. Without a right to effective counsel, sourced in either the Constitution or a statute, the Court believed it was constrained from fashioning a new exception to the bar on subsequent writ applications contained in § 5. Of course, the inevitable consequence of *Graves* was that a petitioner with a substantial IATC claim, if burdened with incompetent counsel in state habeas proceedings, would lose the right to have any court, state *and* federal, review the merits of the claim. *See id*. at 124-25 (Price, J., joined by Holcomb, J., dissenting) ("Applicants only get one shot at habeas corpus relief. If the attorney appointed on his first writ is incompetent, then a defendant, who was deprived of effective assistance of counsel at trial, has no means to enforce his constitutional right to effective assistance of counsel at trial.").

This, of course, changed with *Martinez* and *Trevino*. Now IATC claims can receive federal review, thus bypassing the state court system altogether. Moreover, the principles of federalism, comity, and finality animating the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") do not apply to federal consideration of defaulted IATC claims falling under the *Martinez/Trevino* exception. As a result, with respect to these claims, this Court is deprived of its primary role to correct constitutional infirmities affecting Texas judgments. *See Rose v. Lundy*, 455 U.S. 501, 518 (1982) ("Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" (quoting *Darr v. Burford*, 339 U.S. 200, 204

5

(1950))). As a number of judges on this Court have recognized,[4] the Court should reassess the situation under *Graves* and restore the opportunity to review substantial but otherwise defaulted IATC claims in the first instance to this Court.

B.  This Court has a number of options available to it to create a rule that would permit state court review of defaulted IATC claims and thus restore the federal-state balance underlying AEDPA.

The *Alvarez* concurrence was not only concerned that right to counsel claims can so simply escape review, but with the larger implication that effective representation for developing and presenting IATC claims in state post-conviction proceedings is vitally important to the operation of the criminal justice system:  "Thus, although there is (as yet) no constitutionally recognized right to counsel for post-conviction proceedings, the advisability of the participation of counsel at that stage—at least for claims that can be raised for the first time only at that stage—is as urgent as on direct appeal, where there is a constitutional right to counsel (and indeed, constitutionally *effective* counsel) so long as a state provides for direct appellate review." *Ex parte Alvarez*, 2015 WL 1956254, at \*3.  The concurrence believed a compelling argument could be made for recognizing a right to effective representation in initial-review collateral proceedings under Article 11.071, premised on the entitlement doctrine under the Due Process Clause.  *Id*. at \*4 (quoting *Evitts v. Lucey*, 469 U.S. 387, 401 (1985), for the proposition that

---

[4]     *See Ex parte Alvarez*, 2015 WL 1956254, at \*1-\*2 (Yeary, J., joined by Johnson & Newell, JJ., concurring) ("In my view, recent developments in federal habeas procedure, as well as, to a certain extent, the rationale underlying those new developments, counsel that the Court should revisit the holdings of *Graves*."); *Ex parte Diaz*, No. WR-55,850-02, 2013 WL 5424971, at \*4-\*7 (Tex. Crim. App. Sept. 23, 2013) (urging the Court to stop turning "a blind eye to the failure—even the abject failure—of initial state habeas counsel to safeguard the constitutional rights of his client" and fashion a remedy the Court could apply to such cases); *id*. at \*1-\*2 (Alcala, J., joined by Cochran, J., concurring) (asserting that the Court should fashion an equitable exception to § 5 to allow state court review of defaulted IATC claims; but opining that this case was not the proper vehicle for fashioning the remedy); *Ex parte McCarthy*, No. WR-50,360-04, 2013 WL 3283148, at \*7-\*8 (Tex. Crim. App. Jun. 24, 2013) (Alcala, J., joined by Johnson, J., dissenting) (stating that based upon the sea-change in federal law marked by *Martinez* and *Trevino*, the Court should create an "equitable exception that would mirror the federal exception recognized in *Trevino*"); *id*. at \*1 (Price, J., joined by Meyers, J., concurring) (though that "not unsympathetic with [Judge Alcala's] idea that principles of federalism would justify this Court in taking a second look at the construction it gave Article 11.071 . . . in *Ex parte Graves*, in light of . . . *Martinez* and *Trevino*, opining that this case was not an adequate vehicle for doing so).

6

when the "State opts to act in a field where its action has significant discretionary elements, it must nevertheless act in accord with the dictates of the . . . Due Process Clause"). Because Texas guarantees counsel in capital post-conviction proceedings under Article 11.071, "it may not arbitrarily take [this absolute right to counsel] away without impinging on the applicant's due process rights," as would occur if it tolerated "counsel who was ineffective." *Id*. The concurrence distinguished *Giarratano* because, unlike Texas, Virginia did not provide "an absolute statutory right to state habeas counsel in capital cases." *Id*. at *5. Thus, the concurrence demonstrated that this Court could step in and recognize a constitutional right to state habeas counsel that the Supreme Court alluded to in *Coleman* and *Martinez*.

The concurrence also suggested that the Court should reconsider its construction of Article 11.071, § 2(a), in *Graves*. *Ex parte Alvarez*, 2015 WL 1956254, at *5. To the concurrence, § 2(a)'s guarantee of "competent" counsel embodied a right to counsel providing effective representation. "It makes little sense for the Legislature to recognize the need for an attorney who is competent—that is to say, who has the 'qualifications, experience, and ability' to conduct the daunting factual investigation and to navigate the often-bysantine law involved in post-conviction habeas corpus representation—with no expectation that he would then actually *provide* his client with competent post-conviction habeas corpus representation." *Id*. (emphasis in original). By providing "competent" counsel, the Legislature must have contemplated both aspects would apply to capital representation. Thus, the concurrence would have this Court revisit a crucial aspect of the *Graves* holding.

Finally, the concurrence suggested that this Court's holding in *Ex parte Medina*, 361 S.W.3d 633, 640 (Tex. Crim. App. 2011), in which the Court held that a perfunctory writ application that failed to state any facts in support of otherwise cursorily pleaded claims was not

7

a true habeas application and did not trigger the § 5 bar on subsequent applications, could be extended to defaulted IATC claims. *Ex parte Alvarez*, 2015 WL 1956254, at *6-*7. Though *Medina* was limited to instances of extreme attorney malfeasance, the concurrence believed the distinction between such a situation and one involving attorney negligence in failing to investigate and develop an IATC claim did not "withstand[] scrutiny." *Id*. at *7. "How is it objectively less fair to a capital habeas applicant that he has been deprived of his one full and fair opportunity at comprehensive habeas review by the incompetency—as opposed to the deliberate gamesmanship—of his initial state habeas counsel? Either way, he suffers 'through no fault of his own.'" *Id*. (quoting *Medina*, 361 S.W.3d at 642). This is the solution advanced by Judge Price in *Diaz*. *Ex parte Diaz*, 2013 WL 5424971, at *4-*7 (Price, J., dissenting). *See also Ex parte Kerr*, 64 S.W.3d 414, 422 (Tex. Crim. App. 2002) (Johnson, J., concurring) (stating that the Court "can do better" than simply recasting certain writ applications non-applications under Article 11.071 and could extend the principle to applications that were the result of a broader range of attorney negligence).

As noted, *supra*, in *McCarthy* and *Diaz*, Judge Alcala, joined alternately by Judges Johnson and Cochran, suggested that the Court could simply fashion an equitable remedy under § 5 to allow defaulted IATC claims to be considered in a subsequent writ application. *Ex parte Diaz*, 2013 WL 5424971, at *1-*2 & n.1 (Alcala, J., joined by Cochran, J., concurring); *Ex parte McCarthy*, 2013 WL 3283148, at *5-*8 (Alcala, J., joined by Johnson, J., dissenting). Nevertheless, the Court historically has felt constrained by the text of § 5 and has expressed an unwillingness to judicially create a fourth exception to its bar on subsequent writ applications. *See Ex parte Blue*, 230 S.W.3d 151, 156 n.21 (Tex. Crim. App. 2007); *Ex parte Graves*, 70 S.W.3d at 117. Moreover, the Court has demonstrated a reluctance to overrule *Graves* outright.

In this case, Mr. Brown posits another option that would allow the Court to consider subsequent writ applications raising substantial but otherwise defaulted IATC claims without having to overturn *Graves* or judicially create a fourth exception under § 5. *See Subsequent Habeas Application*, at 9-35. Moreover, the Court would not have to grapple with a difficult constitutional question. Article 11.071 does not vest this Court with habeas corpus jurisdiction; rather, it merely regulates a jurisdiction that derives from the Texas Constitution. *See* TEX. CONST. art. I, § 12 (establishing the writ of habeas corpus as an absolute "writ of right" but granting the Legislature the power to "enact laws to render the remedy speedy and effectual"); TEX. CONST. art. V. § 5 (vesting this Court with original jurisdiction over habeas corpus, "[s]ubject to such regulations as may be prescribed by law." Importantly, in Texas, the writ of habeas corpus may never be suspended. *See* TEX. CONST. art. I, § 12. In *Ex parte Davis*, this Court held that Article 11.071, § 5, did not suspend the writ, as a general matter, with respect to subsequent writ applications and, thus, did not run afoul of the anti-suspension clause. *Ex parte Davis*, 947 S.W.2d 216, 224 (Tex. Crim. App. 1996) (McCormick, PJ., concurring). Instead, § 5 merely regulated "'means, manner, and mode'" through which Court may exercise of its constitutionally vested habeas jurisdiction. *Id*. (quoting *Meshall v. State*, 739 S.W.2d 246, 255 (Tex. Crim. App. 1987)). Effectively then, § 5 only "regulates *when* an applicant must seek relief" and does not preclude entirely an applicant's ability to present potential cognizable claims in post-conviction proceedings. *Id*. at 225 (emphasis in original).

In the wake of *Martinez* and *Trevino*, it is clear that IATC claims are subject to a unique and intractable risk of forfeiture that undermines the reasoning in *Davis*. These claims, as a category, must be raised in post-conviction proceedings; involve an fundamental right essential to the proper functioning of the criminal justice system; require effective representation to

9

develop and present; and are removed from proceedings in which effective representation is constitutionally guaranteed. The mere ability to raise a right to counsel claim in state post-conviction proceedings is inadequate to protect petitioners with a substantial IATC claim. *Cf.Trevino*, 133 S. Ct. at 1920 (rejecting the argument that *Martinez* did not apply to Texas cases because of the theoretical opportunity to raise IATC claims on direct appeal). Consequently, without effective representation, there is a substantial risk that the writ will be suspended as to IATC claims. Because § 5 can place a substantial IATC claim beyond any state review when state habeas counsel ineffectively defaults the claim, this Court should hold that § 5, as applied, unconstitutionally suspends the writ under Article I, § 12, and then draw its jurisdiction to review the claim directly from the Texas Constitution.

> C.    This case presents an ideal vehicle for this Court to reconsider its § 5 jurisprudence.

As the *Alvarez* concurrence recognized, reconsidering this court's § 5 jurisprudence in light of the fundamental changes brought about by *Martinez* and *Trevino* "may have the added benefit of ensuring state review of claims of ineffective assistance of trial counsel, so that as many such claims as possible will be conducted according to the deference required by the Antiterrorism and Effective Death Penalty Act rather than *de novo*." *Ex parte Alvarez*, 2015 WL 1956254, at *7. However, the concurrence found that *Alvarez* was not a good vehicle for this reconsideration because the petitioner in that case had previously filed a subsequent writ application without raising a substantial IATC claim. *Id*. at *9. Thus, the petitioner had bypassed his opportunity to complain that he had lost his one and only bite at the apple because of ineffective assistance of state habeas counsel. *Id*. Mr. Brown's case is not so burdened. The writ application currently pending before the Court represents his first opportunity, in the wake

10

of *Martinez* and *Trevino*, to complain that he was deprived of effective assistance of state habeas counsel.

Mr. Brown's writ application pleads and proves a substantial *Wiggins* claim—one that has at least some merit. *See Subsequent Habeas Application*, at 104-41. The record before the Court contains significant evidence that trial counsel failed to investigate substantial and compelling mitigation evidence, basing her decision to cease her slight investigative efforts not upon sound strategy resting on an investigation sufficient to support such a decision but rather upon her belief that no mitigating evidence would make a difference. This is paradigmatic ineffective assistance of counsel under *Wiggins*. *See Wiggins v. Smith*, 539 U.S. at 526-27; *Lewis v. Dretke*, 355 F.3d 364, 368 (5th Cir. 2003); *Austin v. Bell*, 126 F.3d 843, 848-49 (6th Cir. 1997). Moreover, Mr. Brown has pleaded and provided substantial proof that he was actually deprived of effective assistance of state habeas counsel. *Id*. at 141-44. The *Wiggins* claim is not only substantial under *Martinez* and *Trevino*, it also bears no relation to the bare-bones IATC claim, constituting just four pages and supported with only one piece of admissible evidence (an affidavit from Mr. Brown's mother in which she admitted that she drank while pregnant with him), that state habeas counsel presented, conceding that the claim he presented was not only meritless, but that he provided ineffective assistance of counsel in developing and presenting it.

### III.  Conclusion

WHEREFORE, PREMISES CONSIDERED, Mr. Brown requests that the Court take this opportunity to reconsider its § 5 jurisprudence, revise that jurisprudence in accordance with one of the many alternatives presented to the Court over the years, and hold that the Court has jurisdiction to consider Mr. Brown's application for writ of habeas corpus. Mr. Brown requests

11

that the Court order any additional briefing it may deem necessary to assist the Court in resolving this important issue and permit the parties to present oral argument.

Respectfully submitted,

PAUL E. MANSUR
Texas Defender Service
Senior Staff Attorney
Texas Bar No. 00796078
P.O. Box 1300
Denver City, Texas 79323
(806) 215-1025 (telephone)
(806) 592-9136 (facsimile)
pmansur@midtech.net

By: /s/ Paul E. Mansur
      Paul E. Mansur

Attorney for Defendant,
Arthur Brown, Jr.

### *Certificate of Service*

I hereby certify that on May 26, 2015, I served, by email, the foregoing motion on counsel for Respondent at the following:

Ms. Lynn Hardaway
Assistant District Attorney
Post Conviction Writs Division
Harris County District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002-1923
(713) 755-6657
(713) 755-5240 (facsimile)
hardaway_lynn@dao.hctx.net

/s/ Paul E. Mansur
Paul E. Mansur