## EX PARTE Jeffery Lee WOOD, Applicant

### NO. WR-45,500-02

Court of Criminal Appeals of Texas.

Filed: August 19, 2016

Jeffery Lee Wood, pro se.

## CONCURRING OPINION

ALCALA, J., filed a concurring opinion.

I respectfully concur in this Court's judgment that grants the motion to stay the execution of Jeffery Lee Wood, appli-cant, and remands applicant's claims three and four, which allege that his capital sentence is based on false testimony and that his judgment violates due process because it was based on false scientific evidence. I write separately because I would also remand claims five, six, and seven, in which applicant alleges that his participation in the offense and his moral culpability are too minimal to warrant the death penalty, that evolving standards of decency now prohibit the execution of a person who was convicted as a party to a capital offense, and, more generally, that Texas's death-penalty scheme should be declared unconstitutional because it is arbitrary and fails to target the worst of the worst offenders, in violation of the Eighth Amendment.

In 1982, in examining the constitutionality of the death penalty for individuals convicted and sentenced under a theory of party liability, the Supreme Court in *Enmund v. Florida* examined "the historical development of the punishment at issue, legislative judgments, international opinion, and the sentencing decisions juries have made before bringing its own judgment to bear on the matter." 458 U.S. 782, 788–89, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Under its then-existing examination of jury decisions, the Supreme Court held that Enmund's death sentence "was impermissible under the Eighth Amendment" because he "did not kill or intend to kill and thus his culpability is plainly different from that of the robbers who killed; yet the State treated them alike and attributed to Enmund the culpability of those who killed the [complainants]." *Id.* at 798, 102 S.Ct. 3368.

Five years later, in considering a similar question in *Tison v. Arizona*, the Supreme Court also looked to society's then-prevailing views to determine whether the death penalty was constitutionally permissible for major participants in a violent felony

who did not actually kill and lacked any specific intent to kill. 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). In resolving this issue, the Court took note of the "apparent consensus that substantial participation in a violent felony under circumstances likely to result in the loss of innocent human life may justify the death penalty even absent an intent to kill." *Id.* at 154, 107 S.Ct. 1676. Applying this principle to the facts in *Tison*, which showed that the defendants were actively involved in plotting and executing the prison break of two convicted murderers, the Court said, "[W]e simply hold that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." *Id.* at 158, 107 S.Ct. 1676. The Court thus distinguished *Enmund* on the basis that Enmund's participation in the underlying felony was minor. *Id.* at 149, 107 S.Ct. 1676 (explaining that, unlike the defendants. in *Tison*, Enmund was a "minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state"). Although it concluded that a reckless disregard for human life combined with substantial participation in a violent felony could give rise to a death sentence, the Court declined to further "attempt to precisely delineate the particular types of conduct and states of mind warranting imposition of the death penalty." *Id.* at 158, 107 S.Ct. 1676.

Almost thirty years have passed since the *Tison* decision and, as I have detailed in my recent opinion in *Ex parte Murphy*, societal views about the death penalty appear to have changed considerably during the past several decades. *See Ex parte Murphy*, 495 S.W.3d 282, 2016 WL 3356280. (Tex.Crim.App.2016) (Alcala, J., concurring and dissenting). Given that both *Enmund* and *Tison* looked to prevailing societal views in deciding whether the death penalty would be unconstitutional for people convicted and sentenced under a theory of party liability, as is the situation in the present case, I would also remand that question along with the other matters included in the remand order.

In addition to his claim that his death sentence is now unconstitutional in light of shifting societal views, applicant further alleges that, even under the standard set forth by *Tison* in 1987, his execution is impermissible in light of his minimal participation in the offense and his minimal moral culpability. Applicant alleges that the jury never determined that he either killed a person or intended to kill a person, and an examination of the guilt-innocence jury instructions would support that contention. The guilt-innocence jury instructions permitted the jury to convict applicant of capital murder if he acted as a party by aiding or abetting another person to commit the offense, or, alternatively, if he acted with the intent to commit robbery and another person was killed as a result of that robbery under circumstances that showed that applicant should have anticipated that a death would result, even if he had no intent for a death to occur.[1] The

---

1. Specifically, the guilt-innocence instructions authorized the jury to find applicant guilty under one of two theories, as follows:

   Now if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of January, 1996, in Kerr County, Texas, Daniel Reneau did intentionally cause the death of an individual, Kris Keeran, by shooting him with a firearm while in the course of committing the offense of robbery, and that the [defendant] then and there knew of the intent, if any, of said Daniel Reneau to shoot and kill the said Kriss Keeran and the defendant acted with intent to promote or assist the commission of the offense by Daniel Reneau by encouraging, directing, aiding or attempting to aid Daniel Reneau to commit the offense of

jury, therefore, may well have convicted applicant of capital murder even if it believed that his sole intent was to rob the victim and that he should have anticipated, not that he actually did anticipate, the death of the victim by his co-defendant. Because the guilt-phase instructions permitted him to be found guilty of capital murder for a death that he may not have actually anticipated, applicant is correct that these instructions would have failed to comply with the requirement of *Tison* that the defendant exhibit at least reckless indifference to human life, coupled with major participation in a felony offense. *See Tison*, 481 U.S. at 152, 107 S.Ct. 1676.

But, contrary to applicant's suggestion that the jury never determined that he either killed a person or intended to kill a person, the punishment-phase jury instruction did require the jury to find that he actually anticipated that a human life could be taken before the death penalty could be imposed. The punishment-phase instructions in this case permitted a death sentence for applicant's role as a party in this offense under alternative theories that "he intended to kill the deceased or another, or that he anticipated that a human life would be taken."

At first blush, the jury's finding in this case appears to have met the *Tison* re-quirements, but it likely did not. The jury instructions did comport with *Tison*'s requirement that a death sentence may be appropriate when the defendant exhibits a subjective reckless indifference to human life, but it failed to include the additional requirement that there be evidence of "major participation in the felony committed." *Id.* at 158, 107 S.Ct. 1676. As described above, the guilt-innocence instructions permitted the jury to convict applicant as a party even if the evidence showed much less than "major participation" in the robbery. *See id.* More specifically, the jury instructions permitted the jury to convict applicant even for minimal participation in the robbery based on evidence that (1) he intended to promote and assist his co-defendant to commit robbery, and (2) he "was acting with and aiding, or attempting to aid" his co-defendant. Thus, it is arguable that the jury instructions in this case failed to comport with the *Tison* standard because they failed to require that applicant's participation in the offense be more than minor.

Perhaps one might suggest that I should not concern myself with the fact that applicant's death sentence appears to be unconstitutional under *Tison* because applicant should have raised this claim at some earli-

---

causing the death of Kriss Keeran, you will find the defendant [ ] guilty of capital murder as charged in the indictment;

or

If you find from the evidence beyond a reasonable doubt that on or about the 2nd day of January, 1996, in Kerr County, Texas, [the defendant] and Daniel Reneau entered into an agreement to commit the offense of robbery, as above defined, of Kriss Keeran, and pursuant to that agreement, they did carry out their conspiracy and that while in the course of committing such robbery, Daniel Reneau did intentionally cause the death of an individual, Kriss Keeran, by shooting him with a gun with the specific intent to kill Kriss Keeran, and the defen-dant, [ ], pursuant to the conspiracy, if any, with intent to promote and assist Daniel Reneau in the commission of said robbery, then and there at the time of the shooting, was acting with and aiding, or attempting to aid, Daniel Reneau in the execution of the robbery of Kriss Keeran, if any, and that the shooting of Kriss Keeran was committed in furtherance of the conspiracy, if any, of [the defendant] and Daniel Reneau, to rob Kriss Keeran, and that the shooting of Kriss Keeran, if any, was an offense that should have been anticipated as a result of carrying out the conspiracy, then you will find the defendant [ ] guilty of the offense of capital murder as charged in the indictment.

er stage of his post-conviction challenges and he is now procedurally barred from raising this challenge. I, however, would disagree with that suggestion. I would hold that *Tison* spells out the same type of categorical ban on the death penalty for certain individuals much in the same way as *Atkins* has for intellectually disabled offenders. *See Atkins v. Virginia*, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Applying the same reasoning that applies in the *Atkins* context, applicant may be actually innocent of the death penalty because he may be categorically ineligible for that punishment under the particular facts of this case. I would consider treating *Tison* claims much like this Court has treated intellectual-disability claims that should have been raised in earlier proceedings by permitting relief on those claims when they are proven by clear and convincing evidence. *See Ex parte Blue*, 230 S.W.3d 151, 163 (Tex.Crim.App.2007) (permitting consideration of otherwise procedurally barred *Atkins* claim if applicant could make "threshold showing" of evidence that would be "at least sufficient to support an ultimate conclusion, by clear and convincing evidence, that no rational factfinder would fail to find mental retardation"). At a minimum, however, this Court should file and set the procedural question after remanding this matter to the habeas court so that the parties can develop the evidentiary basis for their claims. Furthermore, because society's views about the death penalty have significantly evolved since *Tison*, I would remand this matter for consideration in the habeas court.

In his seventh claim, applicant contends that this Court "should declare the Texas death penalty unconstitutional because of its arbitrariness and inability to ensure that only the worst of the worst receive death sentences." In keeping with the viewpoint I expressed in *Murphy*, I would also remand this claim to the habeas court for further development and consideration in light of shifting societal views about the death penalty. *See Murphy*, 495 S.W.3d at 286–88, 290–92, 2016 WL 3356280, at *4, 7 (Alcala, J., concurring and dissenting).

With these comments, I respectfully concur.