**EX PARTE Rodolfo Alvarez MEDRANO, Applicant**

**NO. WR–78,123–01**

Court of Criminal Appeals of Texas.

February 8, 2017

Michael C. Gross, San Antonio, TX, for Rodolfo Alvarez Medrano.

Theodore C. Hake, Assistant District Attorney, Edinburg, TX, Stacey Soule, Austin, TX, for the State.

## ORDER

Per curiam.

This is a post-conviction application for writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071.

In August 2005, a jury convicted applicant of the offense of capital murder. The jury answered the special issues submitted under Article 37.071 of the Texas Code of Criminal Procedure, and the trial court, accordingly, set punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Medrano v. State*, No. AP–75,320, 2008 WL 5050076 (Tex. Crim. App. Nov. 26, 2008) (not designated for publication).

In his application, Applicant presents nine grounds of error challenging the validity of his judgment and sentence. The trial court did not hold an evidentiary hearing. The trial court entered findings of fact and conclusions of law and recommended that the relief sought be denied.

This Court has reviewed applicant's allegations and denies relief on those allegations based upon our own review of the record. We also note that grounds two, five, six, seven, and nine are procedurally barred. *See Ex parte Jimenez*, 364 S.W.3d 866, 880 (Tex. Crim. App. 2012); *Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004).

IT IS SO ORDERED THIS THE 8th DAY OF February, 2017.

Alcala, J., filed a dissenting opinion. Richardson, J., filed a dissenting opinion in which Newell and Walker, JJ., joined.

ALCALA, J., filed a dissenting opinion.

I disagree with this Court's order that denies the application for a writ of habeas corpus filed by Rodolfo Alvarez Medrano, applicant. Instead, I would remand this case to the habeas court with instructions to conduct a live evidentiary hearing to develop the record with respect to applicant's ineffective-assistance-of-counsel claims and his claim that he is constitutionally ineligible for the death penalty due to his minimal participation in the offense. A live hearing is warranted because the existing record, which contains only affidavits, does not fully address all of applicant's allegations. In particular, applicant's lead trial counsel is now deceased and thus he was unable to provide an affidavit. Although the second-chair counsel has provided an affidavit responding to some of applicant's allegations of ineffectiveness, counsel's explanations omit many details that might aid the habeas court in evaluating applicant's claims, and thus a live hearing is justified in order to fully develop the record with respect to counsel's strategy in this case. Although the habeas court has forwarded lengthy findings of fact and conclusions of law to this Court recommending that relief be denied, those findings and conclusions contain many errors and

omissions and thus they cannot be adopted by this Court as the basis for its ruling. For all of these reasons, rather than attempt to resolve applicant's allegations based on our own review of the record, I would instead remand this case to the habeas court for an evidentiary hearing and further proceedings as to applicant's claims. I discuss three of applicant's arguments in more detail below.

## I. Propriety of Death Sentence for Party Liability

Applicant contends that his participation in this offense as the person who provided the murder weapons was too minimal to support a death sentence. Specifically, he argues that "the Eighth Amendment forbids imposition of the death penalty on anyone who did not kill, attempt to kill, or intend to kill unless such person was both a major participant in a crime leading to the death of another and acted with reckless disregard to whether a human life would be taken." A jury convicted applicant of capital murder under a theory of party liability based on his involvement in six murders committed by numerous co-defendants, and he was sentenced to death. The State's theory of the case was that applicant, a gang member, entered into a conspiracy with fellow gang members to commit aggravated robbery. The State alleged that applicant provided weapons to the other gang members, who then used the weapons to attempt to steal money and drugs from rival gang members. During the course of the robbery, applicant's co-defendants murdered six people. Applicant was not present at the scene of the shootings. In support of his argument that his participation in the offense was too minimal to warrant a death sentence, applicant relies on *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 95

L.Ed.2d 127 (1987). In both *Enmund* and *Tison*, the Supreme Court looked to historical and current societal trends in determining whether the death penalty would be constitutionally permissible for individuals convicted of capital offenses under a theory of party liability. *See Enmund*, 458 U.S. at 788–89, 102 S.Ct. 3368; *Tison*, 481 U.S. at 154, 107 S.Ct. 1676. This Court should consider whether applicant's participation in this offense was so minimal as to preclude imposition of the death penalty under the circumstances of this case. *See Tison*, 481 U.S. at 158, 107 S.Ct. 1676 (explaining that, to support a death sentence for person convicted of capital offense as a party, facts of the defendant's involvement must demonstrate "major participation in the felony committed, combined with reckless indifference to human life"). Although I recognize that applicant raised this claim previously on direct appeal, I disagree that that fact should preclude him from now litigating this issue on post-conviction review. As I explained in my concurring opinion in *Ex parte Wood*, because I view *Tison* as establishing a categorical ban on executing certain individuals whose moral culpability is too minimal to warrant a sentence of death, I do not view direct appeal as constituting a defendant's sole opportunity to litigate that issue. *See Ex parte Wood*, 498 S.W.3d 926, 927–29 (Tex. Crim. App. 2016) (Alcala, J., concurring). Accordingly, I would hold that applicant is entitled to litigate his Eighth Amendment claim at this stage, and I would permit him to further develop this claim through an evidentiary hearing.

## II. Ineffective Assistance of Counsel

In his present application, applicant claims that his trial counsel were ineffective for, among other things, failing to introduce evidence showing that his statement to police was involuntary because it

was induced by a promise that he would be released to his family and would not be prosecuted for his role in the offense. In order for a confession to be rendered involuntary because it was induced by an improper promise, the promise must be "positive, i.e., of some benefit to the declarant, made or sanctioned by a person in authority, and of such a character as would likely influence the accused to speak untruthfully." *Janecka v. State*, 937 S.W.2d 456, 466 (Tex. Crim. App. 1996) (citing Tex. Code Crim. Proc. art. 38.21). In his application, applicant claims that when he was taken into custody, he initially refused to give a statement and requested an attorney. Some time later, he was allowed a short visit with his wife. According to a sworn statement from applicant's wife, prior to that visit, a detective told applicant's wife that the police were aware that applicant had not been present at the crime scene and that he would be allowed to go home if he would give a statement to police. Applicant's wife then conveyed that information to applicant during their meeting, stating, "[P]lease ... tell them what they want to know, he said you can come home with us." Applicant claims that his subsequent statement to police was induced by this promise, thereby rendering it involuntary.

Although there was a suppression hearing at trial challenging the voluntariness of applicant's statement, counsel only raised the grounds that applicant's statement was taken without an attorney present and after applicant had been awake for over fifty hours. The substance of the allegations with respect to police inducement have never been litigated, and, more particularly, these allegations have never been litigated in the context of assessing whether counsel was ineffective for failing to adequately challenge the voluntariness of applicant's statement. Because he died in July 2011, Villarreal, applicant's lead trial

counsel, was unable to submit an affidavit in this habeas application. Co-counsel Flores submitted an affidavit stating that he could not remember being made aware of information suggesting that applicant's statement had been induced by a promise from police. Flores further indicated that, if he had been aware of such information, he would have used it in attempting to have applicant's statement suppressed. Even if, as the habeas court found, co-counsel Flores's affidavit is credible, the better course under these circumstances, in which counsel states that he simply cannot recall certain events, is to permit applicant to cross-examine counsel in order to possibly refresh his memory by questioning him as to particular details or developments. Furthermore, although Villarreal himself is unable to testify about the allegations, other sources might be able to resolve whether Villarreal was made aware of applicant's claims about inducement. In sum, I would not find Flores's inability to recall details pertaining to this allegation dispositive of applicant's claim, and I would therefore require further proceedings in the habeas court to fully factually develop this issue.

### III. Denial of the Right to Testify

Applicant's claim that trial counsel prevented him from testifying in his own defense should also be remanded for a live evidentiary hearing. The right to testify is fundamental and personal to the accused. *Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005) (citing *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). Because it is trial counsel's responsibility to inform a defendant of his absolute right to testify, this Court applies the *Strickland* framework to a claim that defense counsel's conduct has deprived a defendant of his right to testify, either through counsel's failure to inform

the defendant of that right or by otherwise preventing him from exercising that right. *Id.* at 235.

In his sworn declaration accompanying this application, applicant states that he consistently told counsel he wanted to testify and expected to testify throughout trial. He states that he was surprised when the defense rested without calling him to the stand. In response to this statement by applicant, co-counsel Flores's affidavit states that he cannot remember whether or not applicant wished to testify. Flores further states that lead counsel, Villarreal, had a closer relationship with applicant than did co-counsel. Co-counsel's affidavit states that he "cannot believe that Applicant would have been prohibited from testifying if he so chose." This statement from co-counsel is mere speculation, not evidence that applicant did not assert his right to testify or an explanation as to why applicant was not allowed to testify. At this juncture, the only non-speculative evidence in the habeas record is applicant's statement that counsel refused to allow him to testify. Again, given Flores's inability to recall pertinent details regarding this allegation, I would not deny applicant's claim at this stage on the basis of Flores's affidavit, but would instead permit applicant to factually develop this claim at a live hearing.

## IV. Conclusion

For all of the foregoing reasons, I would not, at this stage, attempt to resolve applicant's allegations based on our own review of the existing record. I would instead remand this case to the habeas court with instructions to hold a live evidentiary hearing and then decide applicant's claims with a more developed record before us. Therefore, I respectfully dissent.

Richardson, J., filed a dissenting statement in which Newell and Walker, JJ., joined.

Today this Court denies relief to Applicant on his habeas claims based on its own review of the record.[1] This is a capital murder case, and it is undisputed that Applicant was not present at the time of the shootings. He was convicted and sentenced to death as a party. The trial court failed to conduct a live evidentiary writ hearing, and, although the trial court's findings were extensive, they contained several inaccuracies. It appears that habeas counsel did not seek an evidentiary hearing, and it is possible that an evidentiary hearing may not further enlighten the trial court's understanding and assessment of the facts beyond the affidavits and other evidence submitted to the trial court. However, the trial court has a statutory obligation to completely and thoroughly review an applicant's claims, and, particularly in a death penalty case, I believe that no stone must go unturned.[2] Therefore, I believe we should remand this case to the trial court to conduct an evidentiary hearing, which would help resolve the factual discrepancies between the record and the trial court's findings.[3] For that reasons,

---

1. *See Ex parte Reed*, 271 S.W.3d 698, 727 ("When our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions.").

2. Convicted death row inmates are entitled to "one full and fair opportunity" to seek collateral review. *See Ex Parte Graves*, 70 S.W.3d 103, 117 (Tex. Crim. App. 2002) (discussing the purpose of Article 11.071).

3. When from the record it appears that there are "unresolved factual issues material to the legality of the applicant's confinement," the court can hold an evidentiary hearing to resolve these issues. Tex. Code Crim. Pro. Art. 11.071, § 9(a).

respectfully, I dissent to this Court's decision to deny relief at this time.

Applicant was a sergeant in the Tri City Bombers ("Bombitas") gang. One of his duties in the gang was to furnish firearms to its members. In this case, Applicant had delivered firearms to members of the Bombitas gang, knowing that the guns would be used to steal drugs from the occupants of a house in Edinburg, Texas. The members of the gang who went to the house killed six people. Applicant was convicted of capital murder under the law of parties and was sentenced to death.

It was undisputed that Applicant did not participate in, nor was even present at the time of, the killings of these six people. However, because Applicant was convicted under a theory of party liability, the State was not required to prove that he specifically intended to kill the victims in order to convict him for capital murder. Applicant admitted transporting weapons to the gang members who did the shootings; Applicant's fingerprints were found on a gun case that contained firearms that were linked to the murders; and, after the murders, Applicant had the guns returned to his home where he cleaned them and then left them with a friend with instructions to destroy them in the event that he was arrested. Applicant knew that the co-conspirators were arming themselves with weapons he had furnished to them, he knew that they were planning to take a large amount of drugs, and he admitted that he was a gang officer and that he knew some of his fellow gang members had committed murder in the past. The State proved that Applicant should have known the gang members were capable of murder based on a murder carried out by the same members a few weeks prior. The jury found that the murders were committed in furtherance of an unlawful purpose and that Applicant should have anticipated the killings as a result of the carrying out of the conspiracy. The jury found that Applicant participated in a conspiracy to commit an armed robbery that resulted in the deaths of six people. Based on the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge sentenced Applicant to death.[4] This Court affirmed the conviction and sentence.[5]

The trial court appointed writ counsel, who filed a "bare bones" initial writ application in 2007. However, because that writ application did not sufficiently present Applicant's claims,[6] and in light of a conflict of interest between Applicant and his writ counsel, this Court dismissed that application and appointed new writ counsel in 2012.

In its Order Containing Findings of Fact, Conclusions of Law, and Recommendation, the trial court made 809 findings of fact, and 316 conclusions of law. As noted above, there are a number of findings and conclusions that the record does not appear to support or that otherwise appear to be erroneous.

Applicant raised among other things, multiple allegations that lead trial counsel rendered ineffective assistance. Applicant's

---

**4.** Tex. Code Crim. Proc. Art. 37.071, § 2(g).

**5.** *Medrano v. State*, No. AP–75,320, 2008 WL 5050076 (Tex. Crim. App. Nov. 26, 2008) (not designated for publication).

**6.** *Ex parte Medina*, 361 S.W.3d 633 (Tex. Crim. App. 2011). In *Medina*, we held that,

because the initial writ counsel (who coincidentally is the same attorney who filed the initial writ in this case) failed to file a cognizable writ application, this Court appointed new writ counsel and established a new filing date for the application to be filed in the convicting court.

counsel is deceased and was unable to provide an affidavit responding to Applicant's claims. His co-counsel furnished an affidavit that essentially refuted Applicant's claims. The trial court found this affidavit to be credible.

My concern is that a number of the trial court's findings of fact and conclusions of law are not supported by the record. Applicant is entitled to a full and fair review of his claims, especially given the nature of his punishment. An evidentiary hearing will allow the trial court to properly and fully address Applicant's claims as well as allow Applicant to cross-examine the former co-counsel.

Under these facts, this Court should require the trial court to conduct a thorough review of Applicant's claims which, in my opinion, necessitates an evidentiary hearing. Therefore, I believe this Court should have remanded this case back to the trial court so that it may conduct an evidentiary hearing and submit findings that are supported by the record. For these reasons, respectfully, I dissent.